THE MASONIC FRATERNITY TEMPLE ASSOCIATION

*v.*

ANNIE E. COLLINS, Admx.

*Opinion filed June 23, 1904.*

1. TRIAL—*what sufficient to warrant submission of case to jury.* Evidence that one running an elevator stopped the car at a floor which had not been announced and then started the car upward before the door was entirely closed, warrants the submission of the question of negligence to the jury in an action for the death of a passenger who was caught between the elevator and the upper floor.

2. INSTRUCTIONS—*when instruction as to liability of owners of passenger elevators will not reverse.* An instruction that a person operating passenger elevators is a common carrier and "is subject to the same rules and laws concerning negligence as are applicable to other common carriers of passengers," while objectionable, standing alone, as leaving too much to the jury, is not ground for reversal, where other instructions state there can be no recovery unless the negligence charged is proven.

*Masonic Fraternity Temple Ass.* v. *Collins,* 110 Ill. App. 504, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. EDMUND W. BURKE, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment for $5000 rendered by the circuit court of Cook county in a suit brought by Annie E. Collins, administratrix of the estate

of John L. Collins, deceased, against the Masonic Fraternity Temple Association, to recover damages for the death of said John L. Collins, occasioned through the alleged negligence of appellant.

Collins was caught between the floor of the ascending cage of an elevator and the top of a door frame in the elevator shaft, and his death thereby occasioned. He was at that time working for the Dupont Powder Company in its office on the fifteenth floor of the Masonic Temple building, in Chicago. The appellant operated a number of elevators, running from the ground floor to the floors above, for the purpose of carrying persons to and from the upper floors. On July 25, 1901, the deceased, with nine other persons, boarded one of these elevators at the ground floor. All these passengers except deceased and two others left the elevator at the third and fourth floors. As the elevator left the fourth floor, one of the passengers other than appellee's intestate called for the sixteenth floor. The elevator stopped at the tenth floor and a lady by the name of May Fleming got on. She was employed on the thirteenth floor, and this fact was known to the man who was operating the elevator. The evidence tends to show that after the elevator again started the deceased called for it to stop at the fifteenth floor; that none of the other passengers who were in the cage after it passed the tenth floor called for any floor except the one who called for the sixteenth floor, as above mentioned, and the man operating the elevator did not announce any floor from the time the elevator left the ground floor up to the time Collins was killed. When the thirteenth floor was reached the elevator stopped, the operator opened the door and May Fleming stepped out. The evidence also tends to show that just previous thereto deceased had stepped over to the side of the elevator where passengers got off, and that as soon as May Fleming had alighted, and while the door of the elevator shaft at that floor was still open, he attempted to step

out, and while his body was partly outside and partly inside the elevator cage it was caught between the floor of the ascending cage and the top of the framework of the door and severed in two parts, which fell to the bottom of the shaft. The door was one which slid back and forth sideways, and was a part of the shaft in which the cage ascended and descended. In the cage itself there was simply an opening for ingress and egress, and there was no door to close that opening in the cage.

Deceased, at the time of his death, was fifty-three years of age, and had been employed by the Dupont Powder Company for eighteen years. He had used the elevators in going to and from his work on the fifteenth floor of the Masonic Temple building four times each working day for two years. He was earning $200 a month, and left him surviving Annie E. Collins, his widow, and a sixteen-year old son, who were living with him at the time of his death. Instructions directing the jury to find the issues for the defendant were offered by appellant at the close of the plaintiff's testimony and at the close of all the evidence, but were refused.

The grounds relied upon for a reversal of the cause are, that deceased was guilty of contributory negligence as a matter of law, and that the circuit court erred in giving to the jury plaintiff's instruction numbered 1.

ALBERT E. DACY, for appellant.

CHILDS & HUDSON, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

At the close of all the evidence a motion was interposed for an instruction directing the jury to find for the defendant. The action of the court in overruling that motion is assigned as error. This assignment presents the question, is there in this record any evidence which, with the inferences reasonably to be drawn therefrom, tends to prove the averments of the declaration?

The evidence that the operator stopped at the thirteenth floor without calling that floor, or the evidence that the operator started the elevator upward before the door at that floor was entirely closed, warranted the submission of the question of appellant's negligence to the jury.

It is urged, however, that there is no evidence that Collins, the deceased, was in the exercise of due care for his personal safety, but, on the contrary, that all the evidence in the case shows that he was guilty of contributory negligence, in that he attempted to step out of the elevator after it had started upward from the thirteenth floor. Considering the evidence most favorable to appellee, we find that as the cage approached that floor it contained four passengers. None of them had called any floor below the sixteenth except the deceased, who had called the fifteenth. The elevator had not stopped since leaving the fourth floor except at the tenth floor. The operator had called no floor since leaving the ground. When he stopped at the thirteenth floor Collins might well understand that they had arrived at the fifteenth floor. When the door was opened, the lady, May Fleming, stepped out, and she testifies that when she had gone four or five steps she looked around; that the cage was then ascending and Collins was crouching between the floor thereof and the top of the framework of the door. Mary W. Grace was also a passenger at the time of the accident. She testifies that shortly before May Fleming stepped out, Collins stepped from behind her, Mary W. Grace, so that he would be near the door; that after May Fleming stepped out the door was open about three feet and that Collins was then just about to step out; that she did not observe whether the elevator was then in motion; that the last she saw of Collins he was crouching down between the floor of the cage and the top of the door-frame; that his head and half of his body were outside; that the door was still open about a

yard, and that she then turned away and saw no more of him; that when she last saw him in that position the floor of the cage was about half way between the thirteenth and fourteenth floors; that the elevator gave a "kind of a jar" and afterwards stopped, and that when she again looked, a moment later, Collins had disappeared. His body was afterward found, cut in two, at the bottom of the elevator shaft. It is true that it is not expressly stated by either of these witnesses last mentioned that the cage was standing still when Collins started to get out. The elevator was one which ran swiftly. If, at the instant before it started upward from the thirteenth floor, Collins, following immediately after Miss Fleming, had started to take the step which would land him outside the elevator and the cage had then moved swiftly upward, the momentum of his body would have carried him forward without his volition, and the cage ascending would have brought him into the position described by Miss Fleming and Miss Grace at the time they saw him crouching between the floor of the cage and the top of the door-frame. We think it might reasonably be inferred from the testimony of these two ladies, taken in connection with the facts shown by other evidence and above recited in this opinion, that the deceased started to leave the cage while it was standing at the thirteenth floor. The motion was therefore properly denied.

By the first instruction given on the part of the plaintiff the jury were told that the defendant, in operating the elevator, is a common carrier, "and is subject to the same rules and laws concerning negligence as are applicable to other common carriers of passengers." It is urged that this instruction is erroneous, for the reason that the jury were thereby left to speculate as to what duties the law casts upon a common carrier. If this instruction stood alone this objection would be good and would require the reversal of the cause, for the reason that the jury would have been left to determine for them-

selves a question of law. The instructions as set out in the abstract are not numbered. One of those given, however, advised the jury that before they could find the defendant guilty they must find that the plaintiff had established, by the greater weight of the evidence, "that the negligence of the defendant, if you find there was any, as charged in one or more counts of the declaration, which are submitted to you, was the proximate cause of the injury which resulted in decedent's death, and that no negligence on his part contributed to said injury." By another instruction the jury were given a correct definition of the "ordinary care" which the plaintiff ,was required to show had been exercised by the deceased: By still another instruction they were advised that if they believed the defendant was guilty of negligence in some manner but was not guilty of the negligence charged in the declaration, they should find for the defendant; and by another they were advised "that the law as given in the court's instructions is the law of the case, and you must follow the same whether you think the law is right or not." While the language quoted from the first instruction should have been omitted therefrom, still, when that instruction is considered in connection with other instructions given, to which we have above referred, we are of opinion that no harm came to appellant, and that the instructions, as a series, stated the law correctly. The later instructions advised the jury that there could be no recovery unless the negligence charged in the declaration was proven. The jury were therefore not left to determine for themselves what negligence would warrant a verdict in favor of the plaintiff. Under such circumstances the judgment should not be reversed. *West Chicago Street Railroad Co.* v. *Scanlan,* 168 Ill. 34.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*