The McCormick Harvesting Machine Company

*v.*

Frank Zakzewski.

*Opinion filed February 21, 1906—Rehearing denied April 11, 1906.*

1. Master and servant—*what must be shown to authorize a recovery for injury from falling of a lumber pile.* To authorize a recovery of damages for injury to an experienced servant from the falling of a pile of lumber, the plaintiff must show that there was some defect in the construction of the pile; that the master, in the exercise of ordinary care, would have knowledge of the defect, and that the plaintiff did not know of the defect and had not equal opportunities with the master of knowing of it.

2. Same—*what is an ordinary risk of employment.* The danger arising from lumber being coated with ice in winter time is one of the ordinary risks of employment, in a lumber yard, of a person experienced in the work.

3. Same—*rule as to assumption of risk by servant.* A servant assumes not only the ordinary risks incident to his employment, but also all dangers which are obvious and apparent; and if he voluntarily enters or continues in the service, knowing, or having means of knowing, its dangers, he is deemed to have assumed the risks and to have waived all claims against the master for damages in case of personal injury resulting from such dangers.

4. Same—*when risk is assumed by servant as a matter of law.* An experienced lumber yard employee who is ordered to remove two piles of ice-coated lumber stacked side by side in piles about

four feet wide and six or seven feet high, without cross-pieces, assumes, as a matter of law, the risk of an injury from the toppling over of one pile after he had removed nearly one-half of the other, thus having had full opportunity to observe the condition of the lumber and the manner in which it was piled.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding.

This is an action on the case, brought in the superior court of Cook county by Frank Zakzewski, the appellee, against the McCormick Harvesting Machine Company, appellant, to recover damages for a personal injury sustained by appellee while working for appellant in its lumber yard, in the city of Chicago.

The original declaration consisted of two counts. Each charged, in substance, that the defendant negligently had and kept two certain stacks of lumber on its premises piled or stacked in a loose, improper, unsafe and insecure manner; that plaintiff was in the employ of the defendant and was ordered to remove these stacks, and while attempting to do so, with all due care, was injured by the lumber from the stacks falling upon him. Afterwards, two additional counts were added to the declaration. Each of these counts charged as negligence the failure of the master to furnish the plaintiff a reasonably safe place in which to perform his work, in that it negligently and carelessly had and kept two certain piles or stacks of lumber in said yard so loosely and carelessly, improperly and unsafely stacked, piled or supported that said piles might fall upon plaintiff while engaged in handling or removing the lumber. The defendant filed the general issue to the declaration, and a trial was had before a jury, which resulted in a verdict for $1350 in favor of the plaintiff. After overruling a motion for a new trial and a motion in arrest of judgment the superior court entered judgment upon

the verdict.    The defendant appealed to the Appellate Court for the First District, where the judgment of the superior court was affirmed, and it now prosecutes a further appeal to this court.

The facts, briefly stated, are as follows:    On February 20, 1901, appellee, who was working for the appellant in its lumber yard in the city of Chicago, was ordered by the foreman of the yard to assist two of his fellow-workmen in removing two stacks of lumber near the railroad track, where they had been unloaded from a car about an hour before, to another part of the yard.    There were two sizes of lumber in the car, and when taken out the lumber had been separated and the two sizes had been placed in different stacks.    The lumber had been laid lengthwise from north to south.    Each stack was from three to four feet in width and from six to seven feet in height.    They were very close together, the space between them being from one inch to three and one-half inches, according to the estimates of the various witnesses.    They did not touch, however, and one did not act as a support for the other.    The lumber in the stacks was to be removed and placed upon a truck which ran upon a track about three feet north of the stacks.    The men were about to commence removing the lumber from the west stack, when Krempski, the foreman of the yard, ordered them to take the lumber from the east one first.    Appellee and one of his fellow-workmen got upon the east stack and removed the lumber, handing it to the third man, who remained on the truck.    The lumber in both stacks was piled up without any cross-pieces between the layers or tiers.    Appellee and his assistant removed an entire tier before taking any from the tier below the one on which they were working.    After taking off from one to two feet of the east stack they stood upon the ground and performed their work.    They had reduced the height of the east stack to about three feet, and had just taken a piece from that stack in order to hand it to the man on the truck, when the west stack fell over towards the east.

The lumber from it struck appellee, throwing him down upon the ground. He fell upon his back, and the lumber from the west stack, together with that from the east stack which it carried with it, fell upon him and broke his leg.

Appellee had worked in lumber yards for a period of from thirteen to twenty years, and had performed all kinds of work connected with handling lumber.

Appellant's foreman, Krempski, testified that he directed the men how to pile this lumber when it was taken from the car, and that it was stacked according to his instructions.

The lumber in the two stacks was green, heavy lumber. It was slippery, and had ice on it when taken from the car. The ground near these stacks was rough and uneven, and appellant was filling low places in the yard with cinders, and the south end of the stacks rested on a pile of such cinders. The stacks appeared all right and did not look like they would fall. The only cause assigned by any of the witnesses for the falling of the stack was that given by one of appellee's witnesses, who stated that the stack was too high and too narrow.

Neither appellee nor the two men who were working with him had anything to do with making the stacks of lumber, and neither of them had seen the stacks before they were directed to remove them, and neither of them had touched the west stack before it fell over.

At the close of plaintiff's evidence in chief, and again at the close of all the evidence in the case, the defendant offered an instruction directing the jury to return a verdict for the defendant. The court refused the instruction in each instance. This action of the court is assigned as error on the ground that the plaintiff assumed the risk of the stack of lumber falling upon him.

W. T. Underwood, for appellant.

George F. Barrett, (Charles V. Barrett, of counsel,) for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

In order to recover in this case it was incumbent upon appellee to establish three propositions, viz.: First, the existence of some defect in the construction of the west stack which rendered the place at which he was ordered to work unsafe; second, that appellant, in the exercise of ordinary care, would have had knowledge of such defect; and third, that appellee did not know of the defect and did not have equal opportunities with appellant of knowing of it. *Lake Erie and Western Railroad Co.* v. *Wilson,* 189 Ill. 89; *Armour* v. *Brazeau,* 191 id. 117; *Sargent Co.* v. *Baublis,* 215 id. 428; *Momence Stone Co.* v. *Turrell,* 205 id. 515.

The peremptory instruction offered by appellant in the trial court at the close of all the evidence in the case preserved the question as one of law reviewable by this court, whether there is in this record any evidence which, with the inferences reasonably to be drawn therefrom, tends to prove the above propositions. *Masonic Temple Ass.* v. *Collins,* 210 Ill. 482.

Appellee offered evidence showing that each of the two piles of lumber in question was between three and four feet in width and between six and one-half and seven feet in height; that the lumber was slippery from the ice upon it, and that there were no cross-pieces between the layers or tiers of lumber in the stacks.

Whether the piling of slippery lumber to a height of between six and seven feet without using cross-pieces between the tiers, when the stack was only between three and four feet in width, constituted a defective or negligent construction of the stack, and whether that was the cause of the west stack falling over, were questions of fact for the jury, and we can not, therefore, say that there was no evidence tending to prove the existence of some defect in the construction of the stack which rendered the place in which appellee was ordered to work unsafe. Neither can it be said that appellant did not know of such defect. The lumber was piled under the

immediate supervision of appellant's foreman.   Appellant, by its foreman, therefore had actual knowledge of the condition of the lumber and of the manner in which the stack was constructed.

There is, however, a total failure of proof to show that appellee did not know of the defects above suggested or that he did not have equal opportunities with appellant of knowing of them.   On the contrary, it appears that he had full and complete knowledge thereof.

He was about fifty years of age when injured, and had been working in lumber yards for a period of from thirteen to twenty years.   During that period, and especially during the four years that he worked for appellant, he had been engaged in removing lumber from cars, stacking it when taken from cars, loading it upon wagons and trucks, piling it and removing it from piles, and, in short, doing all kinds of work connected with the handling of lumber in lumber yards. It thus appears that he was fully informed of all obvious and apparent dangers that might ordinarily arise in the handling and stacking of lumber.

In addition to his testimony showing actual knowledge on his part that the two stacks were each about four feet in width and between six and one-half and seven feet in height, it appears from his evidence that when the foreman ordered him to remove the two stacks of lumber he first started to take down the west stack, and went around on the west side of it, where its manner of construction was plain and obvious.   The foreman then ordered him to remove the east stack first.   He passed around the north end of the stack over to the east side of the east stack.   The height and width of the west stack were not latent defects which required inspection by appellee in order to discover them.   If the stack was too high for its width it was only necessary for a man experienced in piling and stacking lumber, as the evidence conclusively shows appellee was, to look at it to discover that defect.   It would be open and apparent to him.

Appellee also knew that there were no cross-pieces in either stack. His testimony shows that he had a thorough knowledge of the different ways of piling or stacking lumber. He says: "A pile has cross-pieces, while a stack or story has no cross-pieces. It is piled out of the cars without cross-pieces. * * * When I say it has two stories, I mean that it never is a pile; that it is there only for a short time, to be taken away to an alley and piled. * * * There are piles that have a foundation and which have cross-pieces. Those are piles." He referred to the two stacks of lumber as stories, and testified that he was directed by the foreman to remove "those two stories," but to take the east one first; that they were stories, and not piles, because a pile has cross-pieces while a stack or story has none; that both stacks were constructed in the same manner; that the lumber was stacked because the car had to be emptied. From his testimony it does not appear that he was ignorant of the fact that these stacks did not have cross-pieces. On the contrary, his evidence in a number of instances discloses the fact that he knew that both of the stacks were constructed without cross-pieces.

It is said, however, that the evidence shows that these stacks were seven feet in height, and that it was the uniform custom of appellant theretofore to use cross-pieces in stacks seven feet or more in height. If this be true, still appellee had actual notice of the fact that that custom had not been followed in this instance, and made no complaint or objection to working on the east stack and near the west one, and the most that could be claimed on account of the departure from the custom would be that it constituted negligence on the part of appellant, of which appellee had notice. If there had been a departure from the customary method of constructing the stack, and appellee, relying on such customary method and without notice of a change therefrom, had been injured, and if the method actually used was defective and contributed to the injury, then appellee would not have assumed

the risk of the defect arising therefrom. Here, however, appellee knew of the departure from the customary method of constructing the stacks, and therefore necessarily did not rely upon such method.

The lumber in the stacks was slippery, caused by ice forming on the lumber while in the car. The accident occurred in February, 1901. Appellant had been working at this same work for four months prior to the injury. The evidence given on behalf of appellee shows that ice is always found on green lumber taken from cars in Chicago in the winter, and that it is caused by the lumber steaming and freezing in the car. It does not appear that there was any more ice on this lumber which fell than is usually found on lumber taken from cars in the winter. The danger arising from lumber being icy or frozen was therefore one of the ordinary risks of his employment. Moreover, the lumber in the east pile, of which over one-half had been removed by appellee prior to the injury, was in the same condition in this respect, and appellee continued working on it after having discovered that it was slippery, (if he was ignorant of that fact before,) although it was constructed in the same manner, of the same height and width and of the same icy lumber as the west pile.

From what we have above said, it follows that appellee failed to establish the third proposition above mentioned, viz., that he did not know of the defects in the construction of the west stack of lumber which rendered the place at which he was ordered to work unsafe, or did not have equal opportunities with appellant of knowing of them. It must therefore be held, as a matter of law, that he assumed the risk arising from the defects above pointed out in the construction of the west stack of lumber.

'Appellee has argued the question of assumed risk in this case on the theory that the servant does not assume risks arising from the master's negligence, and that the rule that the servant assumes the ordinary risks incident to the busi-

ness presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him, and that it is those risks only which cannot be obviated by the adoption of reasonable measures of precaution by the master that the servant assumes.

The true rule in this regard is, that the servant assumes not only the ordinary risks incident to his employment, but also all dangers which are obvious and apparent, and if he voluntarily enters into or continues in the service, knowing, or having the means of knowing, its dangers, he is deemed to have assumed the risks and to have waived all claims against the master for damages in case of personal injury resulting from such dangers. *Browne* v. *Siegel, Cooper & Co.* 191 Ill. 226; *Cichowicz* v. *International Packing Co.* 206 id. 346.

In *Browne* v. *Siegel, Cooper & Co. supra,* it is said that even if the master fails in his duty to furnish the servant a place ordinarily safe in which to work, and there are to the knowledge of the servant defects which render the place unsafe, the servant is held to have assumed the hazard, for he cannot go on with knowledge of the danger, without complaint, until he is injured and then hold the master liable.

In *Cichowicz* v. *International Packing Co. supra,* this court said (p. 351) : "To say that the servant assumes no risks except such as cannot be obviated by the adoption of reasonable measures of precaution by the master is to abolish the doctrine [of assumed risk] altogether. Under such a rule the master is liable in every case where he has been negligent, although the servant knows of the danger and voluntarily encounters it without objection," and it was there held that the position taken by appellee in this case is untenable.

Appellee, in his brief and argument, says: "The pile was only three feet wide, and appellee maintains that common sense shows that it would be impossible for such a pile of lumber as this to be safe when it has no cross-pieces to bind the tiers together. The pile was built up right alongside the railroad track, upon which heavy cars were at all times run-

ning and jarring the ground around these tracks, and a pile of lumber built high and narrow, as this was built, without cross-pieces, and the lumber being icy and slippery, there can be no question but that the slightest slipping of one piece, caused by any jar, would cause the whole pile to fall down, and this is a matter of which the appellant is charged with notice." This argument applies with equal force to the appellee, and supports the theory that appellee assumed the risk under the rule above stated.

It is also said that the evidence shows that the ground on which the stacks were laid was rough and uneven, and that such condition was not apparent or known to appellee. All that is proven in this regard is that the ground near these stacks was somewhat rough and uneven, but there is no evidence whatever that this condition existed under the stacks. Proof that the ground in some other place near these stacks was rough and uneven does not tend to show that the ground under the stacks was in the same condition.

There was also evidence that the south end of the stacks rested on a pile of cinders; but the size of this pile of cinders was not shown in any manner, nor was it shown that this caused the stacks to be tilted or one side or end to be higher than the other. On the contrary, the evidence introduced by appellee shows that the stacks were level and looked all right. Without some proof of the size of the pile of cinders, or that it caused the stack to stand unevenly on the ground, it cannot be inferred that this constituted a defect in the construction of the stack or that it was the cause or one of the causes of the stack falling.

Other errors assigned are, upon the record now before us, without merit.

The peremptory instruction offered at the close of all the evidence should have been given. The judgment of the Appellate Court and the judgment of the superior court will be reversed and the cause will be remanded to the superior court.                                   *Reversed and remanded.*