### William Thomas, Appellee, v. Republic Iron & Steel Company, Appellant.

MASTER AND SERVANT—*what essential to recover for failure to furnish safe appliances.* In order for a servant to recover of his master because of the latter's failure to exercise reasonable care to furnish reasonably safe appliances, it must appear, first, that the machinery supplied was dangerous, defective and unsafe; second, that the master knew, or, by the exercise of ordinary care, should have known, that the machinery was dangerous, defective and unsafe; and, third, that the servant did not know and did not have equal opportunity with the master of knowing of the defective, dangerous and unsafe condition of the machinery.

Action in case for personal injuries. Appeal from the City Court of East St. Louis; the Hon. J. B. VAUGHN, Judge, presiding. Heard in this court at the August term, 1907. Reversed, with finding of facts. Opinion filed March 18, 1908.

C. E. POPE, for appellant; RICHARD JONES, JR., of counsel.

WEBB & WEBB, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an action in case brought by William Thomas, appellee, against the Republic Iron and Steel Company, appellant, tried at the March term, 1907, of the City Court of East St. Louis, to recover for a personal injury received by appellee on the twenty-fourth day

of February, 1906, while working for the appellant at its plant in the city of East St. Louis, Illinois. The case was tried on two additional counts, to which the defendant pleaded the general issue. The negligence charged and relied upon is that the defendant furnished, used and operated defective and unsafe machinery, causing the plaintiff's injury. The case was tried by jury and a verdict returned for the plaintiff for $2,000 damages, upon which the court rendered judgment, from which the defendant appealed.

The Republic Iron and Steel Company, appellant, is a corporation and owns and operates a rolling mill in the city of East St. Louis. Appellee was injured while working at what is known as the nine inch mill. This mill is used for rolling hot iron into long bars. The mill consists of four sets of rolls, the roughing rolls, stranding rolls, oval rolls and finishing rolls. There are three of the roughing rolls, set one above the other, and three of the strand rolls, set likewise, and two oval rolls and two finishing rolls. Iron is carried from the furnace by means of tongs and first taken to the roughing rolls, where it is worked back and forth through these rolls until it is of sufficient size to pass through the next set, or strand rolls. The operation is repeated through various passes on each of the rolls, until the iron is worked to the proper size. Men work on each side of the rolls and pass the iron back and forth, putting it through a different size hole each time it is passed. The roughing and stranding rolls were secured by an iron framework, the ends of each roll resting beneath iron girders, running north and south. Running in the same direction, above and across the ends of the girders, were iron casings or housings, in width and thickness about ten inches. On top of the rider and above the axle of each of the upper rolls is placed a piece of cast-iron, about four inches square and two inches thick, known as a breaker. This breaker was enclosed on the top and the north and south sides by the casing or housing,

but open on the east and west sides. The space between the sides of the casing was about twelve inches. On top of the breaker rests a large set screw, which prevents the rolls from separating when the iron is put through. The breaker is arched underneath and so designed that when the pressure on the rolls becomes too great it will break and thus prevent the breaking of the rolls or other part of the mill. On the occasion in question, when Thomas was injured, a piece of iron had been brought from the furnace to. the roughers, and they failed to put it through the roughing rolls the required number of passes to make it of proper size for the strand rolls. Appellee took the bar of iron in that condition and started it in the strand rolls. It went through a short distance and "stuck"—the machinery kept revolving. The assistant roller and Thomas were loosening the set screw at one end of the roll, but before they had time to loosen it and the set screw at the other end and thus permit the rolls to separate sufficiently for the bar to pass through, one of the workmen at the mill struck the bar of iron with an axe or sledge, which started the bar through the rolls. It was too large to go through, and the force thus created caused so much pressure on the breaker that it broke. A piece of it flew and hit Thomas, who was standing near the rolls. The piece struck his left eye and so injured the ball that it afterwards had to be removed. The breaker sets between the housing of the mill, the housing coming up on each side of the axle or bearings of and over the top of the ends of the rolls.

A number of errors have been assigned and discussed by counsel in argument, but having reached the conclusion, after a careful examination of the record, that the peremptory instruction requested by appellant at the close of the evidence should have been given, it will not be necessary in this opinion to consider other error or complaint. The negligence alleged, upon which the appellee relies as a cause of action, is that appellant, knowing the danger from fly-

ing particles of the breakers when the mill was in operation, failed to screen the side opening of the casing, or in other practical manner to safeguard the machine. To recover under this declaration it was incumbent upon the appellee to establish three propositions: First, that the machinery supplied was dangerous, defective and unsafe; second, that appellant knew, or by the exercise of ordinary care should have known, that the machinery was dangerous, defective and unsafe; and, third, that appellee did not know and did not have equal opportunity with appellant of knowing of the defective, dangerous and unsafe condition of the machinery. McCormick Machine Co. v. Zakzewski, 220 Ill. 522. There is evidence, a little, tending to prove the first proposition, but none whatever which by any reasonable inference can be held to establish the second and third. Appellee was twenty-three years old and had been working at the mill and about the rolls for seven years, two and a half years as a strander—his particular employment at the time of injury. It is undisputed that the breaker, in like adjustment, was a necessary device to relieve undue pressure upon the rolls while in operation. In purpose it was a safety appliance, a contrivance to prevent injury, not only to the machinery but to the employe as well, for it is reasonable to suppose that the consequence without its use would greatly endanger the operator. It was a mechanical device approved, adopted and used not only by this mill, but by other rolling mills throughout the country. It was the only device of the kind known or used during the entire period of appellee's service for appellant, and there is no evidence of injury to employes caused or feared from the use of this breaker prior to the accident in this case. It is the testimony of many witnesses of long experience that frequently, almost daily, often many times a day, the breakers were broken as designed, the pieces falling harmlessly to the ground. As was necessary on every such occasion the broken plate was

replaced by a new one and this was the duty of appellee or other employes with whom he worked. The breaking and replacing of breakers was of such frequent occurrence and a thing so open to view that surely it could not escape the observation of one whose duty it was to see and know the use of the breaker and the necessity of replacing it when broken. "The rule that the servant is under no primary obligation to investigate and test the fitness and safety of machinery, surroundings, etc., in the absence of notice of defects, is not applicable to the case of one who has been in the employment of his master for such length of time as to require him, in the exercise of ordinary prudence, to take notice of his surroundings." I. C. R. R. Co. v. Sanders, 58 App. 117. Appellee says that in all the years of his experience he never before the time of his injury knew a breaker to fly in pieces in such manner as to endanger the men at work about the machine. And so testified all the witnesses, including those called by appellee and heard before the evidence was first closed. This was the first time that any of the witnesses ever knew a piece of breaker to fly with sufficient force likely to injure any one. Appellee's witness Peters, working with appellee at the mill, testifies that he had seen the breakers break a dozen times, but never saw one fly. "They would always fall right down." After the evidence was closed and the motion by appellant for a peremptory instruction had been argued and denied by the court, leave was given to appellee to introduce further testimony. Under this leave three witnesses were called and examined touching their knowledge and experience as to the flying of pieces when a breaker gave way. Reese Davis, at one time foreman in this mill said, that sometimes the pieces would fly out a little way, not very far. Other witnesses testified that in years of experience they remembered—some of one, others of two or three instances—when pieces flew out a distance of a few feet and with more or less violence. This is substantially all the evidence bearing upon the question of appel-

Thomas v. Republic Iron & Steel Co.

lant's negligence as alleged. We find here no evidence that appellant knew or by the exercise of ordinary care could have known that the breaker as adjusted and operated was dangerous, defective or unsafe. The appellee says that he did not know, or think of danger from flying pieces of breakers, and so, in effect, say all the witnesses who testify, all of whom were experienced in that kind of work and familiar with the machine and its operation. If they did not know or believe there was danger, nor at any time make complaint, how, in reason, was the appellant to know? If it could be contended that appellant, by the exercise of ordinary care should have known that pieces of the breaker would fly through the unenclosed sides of the casing, thereby endangering its servants, it is still impossible to escape the proposition, that appellee's opportunity for knowing the condition and the danger was equal or greater than that of appellant. As was said by the court in C., R. I. & P. Ry. Co. v. Clark, 108 Ill. 113, discussing the proposition we are now considering, "reasonable care only could, when exercised by the company, reach the same results that would be attained by the use of the same care used by deceased. If his care and diligence could not learn that it was dangerous, it is unreasonable to hold appellant liable, when, by the use of the same care, it could not learn there was danger." The language quoted may fairly be used in argument under the facts in this case. The judgment will be reversed and as it appears from the record that appellee has no cause of action, under the evidence, the case will not be remanded.

*Reversed, with finding of facts.*

We find as ultimate facts, to be incorporated with the judgment, that appellant was not guilty of the negligence alleged in the declaration, and that the injury to appellee was not caused by the negligence of the appellant, and that his injury was the result of risk and hazard incident to his employment at the time of injury and which he assumed.