Nicholas Rausa, Plaintiff in Error, v. Peter Bartzen et al., Defendants in Error.

Gen. No. 13,917.

1. MASTER AND SERVANT—*what essential to recovery under charge of defective scaffold.* To entitle a servant to recover of his master for an injury resulting to him from an alleged defective scaffold, he must prove, first, that the scaffold was defective; second, that his master had notice thereof or in the exercise of ordinary care would have had knowledge thereof; and, third, that he, the servant, did not know of the defect and had not the same means of knowing such defect as had his master.

Action in case for personal injuries. Error to the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed April 17, 1908.

Statement by the Court. The plaintiff in error brought in the Superior Court an action on the case against the defendants in error, his employers, to recover for injuries sustained by him in falling from a scaffold provided for him to work on by the defendants. At the close of all the evidence the court directed a verdict for the defendants, and to reverse the judgment entered on that verdict this writ of error is prosecuted.

The work in hand was putting siding on the north side of a two-story frame building forty feet long. For this purpose there was a scaffold about four feet below the frieze board and eighteen feet above the ground, made of planks supported by brackets. A

bracket consisted of an upright 2x4 scantling four feet long which, when in position, rested against the side of the building; of a horizontal 2x4 scantling three feet long extending out from the building at right angles with the upright, the inner end of the horizontal arm nailed to the top of the upright, and of two braces five feet long made of inch boards six inches wide, running from the outer end of the arm to the lower end of the upright, one on each side. A hole was bored from the top of the horizontal arm at an angle down through that arm and through the upright near the junction of the two pieces. In this hole a pin sixteen inches long was placed with a head on the upper end, and the lower end extending some inches from the upright. To hang a bracket to the side of a building, a hole was bored in the sheathing, and the projecting end of the pin inserted into such hole. In this manner the brackets in question were hung to the building, through holes in the sheathing, which was seven-eighths of an inch thick. In the scaffold in question there were six brackets, and consequently five spaces between brackets. The east bracket was about a foot from the east end of the building, and the west about the same distance from the west end. The space between brackets was a little over seven feet. Beginning at the east end of the building, two 2x6 planks were laid on the first three brackets, the west end of the planks resting on the third bracket; then came a 2x10 plank, its east end resting upon the west end of the two six inch planks and its west on the fifth bracket; then came two more 2x6 planks, their east ends resting on the west end of the ten inch plank, and their west ends resting on and extending beyond the west bracket.

But two men were on the scaffold on the day of the accident, plaintiff and Walz, a witness for the plaintiff. Plaintiff testified that he did not notice how the scaffold planks were laid. Walz testified that when he went on the scaffold to work that morning, some

of the planks were out of place; that he placed them in place; that he laid the two west planks "together close, together straight east and west. Just close together, I mean so as to be tight. Maybe they was half an inch out of the way, but laid them like this, laid them solid." He further testified that at that time he nailed the outside plank to the west bracket; that he put in a six or eight penny nail; that he went upon the scaffold immediately after the accident, "that the outside west plank was still in the same place, it was nailed on the west corner. The nail had not come out then."

Roeser, a witness called by plaintiff, testified that a week before the accident, he braced the west bracket by placing a 2x4, so that its upper end was under the horizontal arm of the bracket, at the angle between that arm and the upright, and its lower end was on the ground. Soon after Walz went on the scaffold, plaintiff went up to help him put on siding. They first were on the middle, or ten inch plank. When all the siding was put on above that plank, they went towards the west end of the building. Plaintiff sat down on the west planks, at a point four feet east from the west end of the building, and he and Walz resumed work. Walz soon afterwards went down from the scaffold for nails, and at the time plaintiff fell he was alone on the scaffold. He had put on all the boards he could reach while sitting down, and got upon his knees. His testimony, in chief, as to what occurred was as follows:

"Walz went down to get some nails and I put up the last three pieces up to the last one. In putting up the last one I stood on my knees. On that part of the scaffold there were two planks. My knees were on the nearest one towards the building. My toes were on top of the outside plank. The board was pretty hard to get up in place and I shoved it pretty hard and I pounded it with the hammer and I drew back to hit it again with the hammer and the board tipped

in the back, the outside one. When the board tipped I swung backwards and I tried to hold myself forward and the bracket gave a jerk. Then I grabbed the front board, I wanted to hold myself, and the board tipped over and I fell. The board next to the building tipped over. I wanted to hold myself and it tipped over. I caught it on the edge next to the building. The plank tipped over and caught my finger in between and I fell down." By the fall plaintiff was seriously injured. He had not been on the scaffold before the day of the accident, and had been at work there half an hour or more before he fell.

WALTER A. BRENDECKE and PAUL C. SCHUSSMAN, for plaintiff in error.

WINSTON, PAYNE, STRAWN & SHAW, for defendants in error; JOHN BARTON PAYNE, JOHN BLACK and WALTER H. JACOBS, of counsel.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

The question presented on the motion by the defendants to direct a verdict was, whether, taking as true the testimony most favorable to the plaintiff, and drawing therefrom the inferences most favorable to the plaintiff which could reasonably be drawn therefrom, the jury might properly find a verdict for the plaintiff. If so, the trial court erred in directing a verdict for the defendants; if not, the direction was proper.

The defendants were bound to use reasonable care to furnish the plaintiff a reasonably safe scaffold to work on.

Plaintiff in error contends that the evidence shows the following defects in the scaffold:

"(a) That two rear planks on which the plaintiff was working at the time of his injury only had two points of support, i. e., rested on the single plank at the east end and on a bracket at the west end, while

all the other planks had three points of support in that an additional bracket was beneath their center.

"(b)    That the combined width of the two rear planks was at least twelve inches when absolutely tight together and that they were about one-half inch apart, while the center plank, which they overlapped and on which they rested at their east end, was only ten inches in width.

"(c)    That the rear planks were either not nailed at all or insufficiently nailed.

"(d)    That the pin-hole in the rear bracket was in such condition that the pin would slide up and down and that this was not a general or usual condition.

"(e)    That the placing of a brace at the right angle of the bracket would tend to lift the bracket out of its support in the wall and when the plank tipped cause the bracket to jerk and to fall and when the brace fell the bracket would again move."

The distance between the west bracket and the bracket next east was the same as the distance between the other brackets. We are unable to perceive any sufficient ground for the contention that the scaffold was defective because the west planks were supported by only two brackets, while the other planks were supported by three brackets, or any causal connection between the fact that the west planks were supported by only two brackets, and the fall of plaintiff from the scaffold. The west end of the planks of that part of the scaffold from which plaintiff fell were laid on the west bracket, and the outside plank was nailed to that bracket. The east end of said planks rested on the ten inch plank, and the outer edge of the outside plank extended beyond the outer edge of the ten inch plank not more than two inches. Walz, plaintiff's witness, testified that he went on the scaffold immediately after the accident and found the outside west plank still in place, still nailed to the bracket, that the nail had not come out. The only evidence tending to prove that the outside plank tipped was

the testimony of the plaintiff that it "tipped." His face was towards the building. He did not testify that he saw the plank tip, or in which direction or to what extent it tipped, but merely that "the board tipped in the back; the outside one." Plaintiff, to save himself from falling, caught hold of the inner edge of the inside plank and turned that plank over on the outside plank, and the plank so turned over by him was the only plank found out of place by Walz when he went on the scaffold after the accident.

Whether the jury might properly find as a fact that the scaffold was defective and not reasonably safe, because while the outside plank was laid on and nailed to the west bracket its east end rested on the ten inch plank and its outer edge extended two inches beyond the outer edge of that plank, it is not necessary for us to decide. To entitle him to a verdict against the defendants, plaintiff was bound to offer evidence from which the jury could reasonably find, first, that the scaffold was defective; second, that the defendants had notice thereof, or in the exercise of ordinary care would have had knowledge thereof, and, third, that he did not know of the defect and had not the same means of knowing such defect with the defendants. McCormick Har. Co. v. Zakzewski, 220 Ill. 522; Montgomery Coal Co. v. Barringer, 218 id. 327; Republic Iron Co. v. Lee, 227 id. 246.

The defect, if any there was, lay in the fact that the outer edge of the east end of the outside six inch plank extended too far beyond the outer edge of the ten inch plank on which it rested. Plaintiff worked on the ten inch plank nearly half an hour. He then walked on that plank to its west end and on to the two west six inch planks. He had full opportunity to observe the widths of the planks and how they were laid in respect to each other. He must therefore, we think, be held to have assumed the risk arising from the fact that the outer edge of one plank extended too far beyond the outer edge of the plank on which it rested.

As to the contention that the scaffold was defective because the outside plank was not nailed or was insufficiently nailed to the west bracket, it is sufficient to say that the testimony of Walz, plaintiff's witness, that he nailed that plank to the west bracket, and that when he went on the scaffold immediately after the accident, he found that plank still nailed to the bracket, that the nail had not come out, stands uncontradicted.

The office of the pin was to hold the bracket at its proper height against the side of the building. The brace which ran from the angle of the bracket to the ground served the same purpose. It was only necessary that the pin or brace should hold the bracket in place, for in place, the weight placed on the horizontal arm of the bracket was supported by the diagonal braces which ran from the outer end of the horizontal arm to the lower end of the upright. By such braces the strain or pressure of the load on the horizontal arm came upon the upright, and through the upright upon the side of the building against which it was placed, not upon the pin or the ground brace. The fact that the hole in which the pin was placed was larger than the pin, is immaterial. The office of the pin and that of the ground brace, as has been said, was only to keep the bracket in place. There is no evidence tending to show that the west bracket was not at all times in place, and Walz went upon the scaffold after the accident and, without making any change in the scaffold other than putting back in place the rear plank which plaintiff had turned over upon the outer plank, used the scaffold until he had put on the remainder of the siding.

In our opinion, on the evidence, the trial court properly directed a verdict for the defendants, and we find no error in procedure.

The judgment of the Superior Court will be affirmed.

*Affirmed.*