### John Thomas, Appellee, v. John Armstrong Lime & Quarry Company, Appellant.

1. MASTER AND SERVANT—*when latter cannot recover where injury results from use of dynamite.* If a servant undertakes to use dynamite in a way known by him to be dangerous, he cannot recover of his master for an injury resulting, notwithstanding assurances of safety by his foreman—the servant's knowledge of the danger being equal to that of the foreman.

2. ORDINARY CARE—*when question of exercise of, one of law.* Ordinarily, it is a question of fact for the jury whether or not a plaintiff was in the exercise of ordinary care, or whether he was relieved of assumed risk, or excused in obeying an order contrary to his own better knowledge and judgment, but where the evidence, facts and circumstances are such that all reasonable men will agree that he was guilty of negligence, the question becomes one of law.

Action in case for personal injuries. Appeal from the Circuit Court of Madison county; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the August term, 1908. Reversed with finding of facts. Opinion filed March 4, 1909.

WISE, McNULTY & KEEFE and LINN R. BROKAW, for appellant.

J. V. E. MARSH and E. C. HAAGEN, for appellee.

MR. PRESIDING JUSTICE MYERS delivered the opinion of the court.

This is an action in case brought by appellee against appellant to recover for personal injuries sustained by appellee while in the employ of appellant. The declaration consisted of three counts. In the first count it is alleged that the defendant negligently failed to provide the plaintiff with a safe tamping pole or rod to be used in loading dynamite. In the second count it is alleged that the plaintiff requested the defendant to furnish him with a wooden tamping pole for use in loading dynamite, which the defendant negligently refused to do, and negligently directed the plaintiff to use an iron pole or rod instead. In the third count it is alleged that plaintiff requested the defendant to furnish him with a wooden pole, which the defendant neglected and refused to do, and ordered the plaintiff to use a steel tamping pole in loading dynamite, promising that a suitable wooden pole would be provided for charges to be loaded thereafter. It is alleged in each of the counts that the plaintiff was in the exercise of due care for his own safety, that the iron rod was a dangerous tool for tamping dynamite, that it caused an explosion, and that by reason of the negligence alleged the plaintiff was injured.

A plea of not guilty was filed, the case was tried by a jury, which returned a verdict for the plaintiff for $8,500. A motion for a new trial was overruled, judgment on the verdict rendered, and the defendant appealed.

It appears from the evidence that plaintiff is a man forty-nine years old and, for thirty years, his chief occupation has been that of a quarryman, working in the stone quarries about Alton where dynamite has been used. He was familiar from experience with all kinds of work required in quarrying stone in that vicinity, and, especially, with the use of drill and dynamite as employed in appellant's quarry at the time of the injury. He was employed by appellant for general

service in the quarry, that is, to work in whatever capacity directed, his experience and qualifications being understood and recognized. At the time of injury, he was employed as the regular powder man in the quarry work, and it was his duty to load with dynamite the drilled holes in the rock, and to prime and discharge the blasts in this quarry. He had been working continuously at this job for more than a year, and, from the evidence, it may be said that he was an expert workman in that kind of work. On the day in question, he took a box of dynamite to the ledge of rock where blasting was to be done, and where a number of holes, about twelve feet deep, had been drilled and prepared for loading. The dynamite was in the forms of sticks, eight inches long and seven-eighths of an inch thick, covered by paper shells. To load and prepare a blast, the hole was half filled with dynamite sticks tamped with a pole. Above the dynamite, the hole was filled with clay. It was the duty of appellee to load the hole, prepare the blast, and thereafter discharge the same by means of electrical connection and apparatus. On the day of his injury, the appellee loaded two of the holes, using a steel or iron rod for tamping the dynamite sticks put in. Appellee testifies that while at work filling the third hole, he asked the foreman for a wooden pole for tamping, and was told to go ahead and load up with the steel rod, and that a wooden pole would be supplied for the next load. He further testifies, that the foreman assured him that he would get along all right using the steel rod, and when appellee expressed dissatisfaction, the foreman threatened to discharge him if he did not go ahead. He proceeded with his work, using the steel rod, and shortly thereafter the dynamite was exploded, causing the injury complained of.

A peremptory instruction to find for the defendant was asked at the close of the evidence and refused by the court. After a careful review of the evidence and consideration of the argument of counsel, we are

of opinion that the peremptory instruction should have been given, and that the appellee has no cause of action. Under the evidence of record, we do not think that appellee was in the exercise of due care for his own safety, or that he could reasonably rely upon the assurance of safety by his foreman, or, as a reasonably cautious man, that he should have obeyed the order of his foreman. From appellee's own testimony, he must be held to have known and fully appreciated the fearful danger from use of the steel rod in tamping the dynamite. That he used it voluntarily in loading two holes before calling for a wooden pole, known by him to be the only proper implement, is proof of his reckless indifference to consequences. Familiar with the powerful explosive nature of dynamite, and the need of the highest degree of care in handling it, he could not, in the exercise of reasonable care for his own safety, take any chances whatever in using an implement, which, as he says in effect, he knew was liable to cause an explosion. Experienced as he was, with knowledge of the danger, equal, if not superior, to that of his foreman, it may not be argued that he acted as a reasonably careful man in risking life to save his position as an employe. Appellee testifies that only wooden poles should be used in tamping, and that it was against the law of the dynamite company to use any other. In the case of McCormick Machine Co. v. Zakzewski, 220 Ill. 522, the action was to recover for injuries sustained while the plaintiff, under an order of the defendant, was engaged in removing stacks of lumber alleged to be in a dangerous condition. It was claimed that the lumber was piled without the use of cross-pieces, which theretofore had been the custom, and that the failure to use cross-pieces rendered the stacks unsafe and caused them to fall. In discussing the question of assumed risk in that case the court says: ''If there had been a departure from the customary method of constructing the stack, the appellee, relying on such

customary method, and without notice of a change therefrom, had been injured, and if the method actually used was defective and contributes to the injury, then appellee would not have assumed the risk of the defect arising therefrom. Here, however, appellee knew of the departure from the customary method of constructing the stacks, and therefore necessarily did not rely upon such method." It was held that appellee failed to establish that he did not know the defects in construction which rendered the place at which he was ordered to work unsafe, or did not have equal oppurtunities, with appellant, of knowing them. It was therefore held, as matter of law, that appellee assumed the risk from the defects pointed out. With equal propriety it may be said of the appellee in this case, that the appellee knew of the departure from the customary method of tamping dynamite, and the customary implement used for that purpose, and therefore necessarily did not rely upon such method or such implement. A like conclusion follows, and we are constrained to hold as matter of law, that appellee assumed the risk arising from the use of the steel rod in tamping dynamite. A case in point is found in the 113 Mo. App. 597 (Whaley v. Coleman) from which we quote: "The plaintiff, an experienced miner, was injured on August 5, 1902, by the premature explosion of a stick of giant powder, which the plaintiff's assistant, under his direction, was pushing into a drilled hole, using for the purpose the shank of a steel drill. It is shown that the holes after being drilled were usually filled with the explosive late on each day and exploded before the next shift of miners began work." It was alleged that plaintiff complained to the defendant's foreman and requested to be furnished with a gas pipe, a less dangerous implement for pounding the powder into the holes and was told, "All right, go ahead and use the steel; it will be all right, but don't punch the powder." The court says: "But he seeks to avoid the responsibility of

using the instrument on the ground that he had called the attention of the defendant's foreman to the matter and that he continued to use it under a promise that he would be furnished one safer and more suitable for the work. The general rule in such cases is that, if the servant continues his employment he is not precluded from recovering for injuries sustained by reason of the negligence of the master if the risk is not of such a character that a reasonably prudent person would not continue in the service. * * * But there are exceptions to all general rules; where there is no conflict but the evidence is all one way, and there can be but one conclusion, the matter becomes a question of law for the court. The use of the steel drill by the plaintiff was an act of the grossest negligence. It is a matter of common experience that where steel and flint are forcibly brought in contact, the result will be sparks of fire, and that fire coming in contact with powder produces an explosion. And no one knew such to be the case better than the plaintiff. He was not authorized by anything that was said by the foreman to use the drill, because he was equally as well informed of the danger as the foreman. On the face of things, the risk was so glaring, and at all times impending to such a degree, that no person of ordinary prudence could for a moment have believed that the drill could be used by the exercise of ordinary care with safety. A servant is not bound to obey the master when he has reason to anticipate that danger in the service is always impending and that he is liable to suffer injury at any moment, which the greatest care and caution on his part will scarcely avert." And such we think is the rule applicable under the decisions of this state, to the evidence in the case at bar.

"The rule which exempts an employe from assuming the risk where a promise to repair is made is designed for the benefit of those engaged in work where machinery and materials are used of which the em-

ploye has little knowledge, but it does not apply to ordinary labor which only requires the use of implements with which the employe is entirely familiar." Webster Mfg. Co. v. Nisbett, 205 Ill. 273. "Where, from the construction of the appliance and the familiarity of the servant with its use, there is no reason to presume the master knows or could have known more of the dangers arising from its use than the servant, the rule that the servant is not exempt from the assumption of the risk does not apply, even though the master has notice of the defect and has promised to repair." Consolidated Barbed Wire Co. v. Maxwell, 116 Ill. App. 196.

Ordinarily, it is a question of fact for the jury, whether or not a plaintiff was in the exercise of ordinary care, or whether he was relieved of assumed risk, or excused in obeying an order contrary to his own better knowledge and judgment, but where the evidence, facts and circumstances are such that all reasonable men will agree that he was guilty of negligence, the question becomes one of law. Serious and distressing as are the appellee's injuries, we are compelled to hold under the prevailing law, that he has' no cause of action against appellant, and that the judgment must be reversed without remanding the cause.

*Reversed with finding of facts.*

We find as facts, to be incorporated in the judgment, that the appellee was guilty of contributory negligence and that the injuries sustained were within the risk assumed by him.