## Dauchy Iron Works v. Luke Nevin.

### Gen. No. 12.771.

1. ASSUMED RISK—*when promise to repair, does not preclude operation of doctrine of.* A promise to repair by the master does not apply to a simple appliance, such as a runway constructed by laying planks on beams, and such a promise does not suspend the operation of the doctrine of assumed risk.

2. ASSUMED RISK—*application of doctrine of, where servant violates instructions.* The doctrine of assumed risk applies and will preclude a recovery if a servant when injured was in the act of disobeying instructions given by his master.

BAKER, J., dissenting.

Action in case for personal injuries. Appeal from the Superior
Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.
Heard in the Branch Appellate Court at the October term, 1905.
Reversed, with finding of facts. Opinion filed December 11, 1906.

Statement by the Court.   This is an appeal from
a judgment of the Superior Court in an action for
damages for personal injuries, by appellee against
appellant.

Appellant is a corporation engaged in the prepar-
ation and erection of various kinds of structural iron
work. In the summer of 1902, appellant was engaged
in erecting the steel construction work for a hotel
building in Dwight, Illinois.

On August 19, 1902, the work had progressed to
such an extent that some of the workmen, and ap-
pellee among them, were employed in wheeling iron
columns along what was called a runway, in the sec-
ond story of the building. The method employed was
to raise the columns from the ground with a derrick,
and when they had been raised to the second story,
they were carried or wheeled to the part of the build-
ing where they were needed, by means of a "dolly,"
which was a small frame running on a roller, and was
about a foot wide. A runway, so called, was con-
structed by laying two two-inch planks, twelve inches
wide, loosely on the horizontal beams which made
the frame work of the building, except for a distance
of two or three panels in the extreme southwest part
of the building, where there was but one plank twelve
inches wide.

Appellee, the plaintiff, had been a skilled worker
in structural iron work for over fourteen years in
Chicago and other places. For some months prior to
commencing work for appellant he had been taking
treatment at Dwight, and had observed the building
more or less as it was being constructed. He had
known Buckham, appellant's foreman on the build-
ing, for several years. On August 4, 1902, appellee

went to work on the building. Some days before his injury he began the work of trucking iron along runways on the second floor. Appellee had himself, with the other members of his gang of workmen, participated in laying the planks which formed the runway in question. He knew at the time the planks were laid, and up to a half hour before his injury, that there was but one plank in the runway in the panel at the southwest end of the building.

On August 19, 1902, while appellee with three or four others were taking a roof column along the runway, appellee, when they came to the place where there was but one plank, stepped off the runway and fell between the iron beams, but fortunately caught himself and did not fall to the floor below. At the time he stepped off he was walking backward pulling a rope attached to the dolly.

RITSHER, MONTGOMERY & HART, for appellant.

JACOB C. LEBOSKY, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The declaration proceeds upon the theory of negligence on the part of appellant in that appellee, knowing the incomplete condition of the runway, advised appellant of its incomplete condition, and that the foreman of appellant promised appellee that he would immediately fix the same; that appellee was then called to another portion of the building for a time, and was afterwards ordered to work upon the runway, and that while using the runway and hauling irons upon the same, he necessarily and unavoidably tripped and slipped at the point where appellant had negligently neglected to fix it as it had promised, and was injured.

The testimony of appellee shows that he was a

structural iron worker by trade, and had been employed for over fourteen years as a skilled worker in structural iron work. During that period he had been employed by almost every contractor in Chicago in that line, and had done similar work in other places. He testified that the runway in question was made by the gang of men with which he was working, and that he was working with them at the time the runway was made. A part of the runway was made in the forenoon of the day of the accident, and the part where the single plank was laid was made in the afternoon. The accident happened about half after one o'clock. Appellee knew that a part of the runway was made of a single plank instead of two planks placed side by side. His knowledge of this fact up to within a half hour before the accident is not questioned. Having this knowledge, he said to Buckham, the foreman: "This run has got to be fixed, Jim. We ought to have another plank in there." The foreman replied: "We will fix it." He further said he would take Patterson and fix the runway; and took Patterson away from the gang.

Appellee had assisted in taking one or more columns over the single plank part of the runway. The injury occurred while he and three or four others were taking a roof column along the runway in precisely the same manner in which they had taken the other columns over the runway. Appellee was walking backwards along the runway pulling on a rope attached to the dolly. One or more of the men working with him were steering the dolly from behind. Appellee testified that there had been no change in the situation or surroundings; that the light was good and there was nothing to prevent a man seeing the situation and location of the planks; that if he had been facing forward he could not have helped seeing that there was only one plank there, and that as he was backing along where there were two planks

he stepped off the end where the single plank was laid.

It clearly appears from this evidence that the runway was the simplest sort of an appliance, which appellee himself had assisted in constructing, and that appellee was as familiar with its construction and location as the foreman or appellant.   Nothing could be more simple than this runway.   The light was good and everything about it was clear to the most casual glance.

In our opinion the law that a servant is relieved from the assumption of the risk of his employment for a reasonable time after complaint by him, and a promise to repair by the master, does not apply to a simple appliance such as this runway, constructed by laying planks on beams.   In Gunning System v. La Pointe, 212 Ill. 274, 279, the court said: "The cases where the rule of assumed risk is suspended and the servant exempted from its application under a promise from the master to repair or cure the defect complained of, are those in which particular skill and experience are necessary to know and appreciate the defect and the danger incident thereto, or where machinery and materials are used of which the servant can have little knowledge, and not those cases where the servant is engaged in ordinary labor, or the tools used are only those of simple construction, with which the servant is as familiar and as fully understands as the master.   (Webster Mfg. Co. v. Nisbett, 205 Ill. 273; Illinois Steel Co. v. Mann, 170 id. 200; Meader v. Lake Shore & Michigan Southern Railway Co., 138 Ind. 290; 37 N. E. Rep. 721; Marsh v. Chickering, 101 N. Y. 396; Power Co. v. Murphy, 115 Ind. 570; 18 N. E. Rep. 56; St. Louis, Arkansas & Texas Railway Co. v. Kelton, 18 S. W. Rep. 933; Bailey on Master & Servant, Sec. 3103; Barrows on Negligence, pp. 121, 122.)"

Appellee voluntarily assumed the risks incident to

the defects and dangers of which he had full knowledge, and the promise of the foreman to repair or cure the defect complained of, under the authorities above cited, did not relieve him from the assumption.

The testimony of Buckham, the foreman, that he had repeatedly warned and cautioned the men, including appellee, in connection with their work with the dolly, not to walk backwards but to keep their faces to the front so that they could see where they were going, was not denied. It is admitted by appellee that he was walking backwards. He was thus violating instructions at the time he received his injuries. He was guilty of negligence in walking backwards, which contributed to his own injury. Under such circumstances he cannot hold his employer liable in damages. By walking backwards "he voluntarily incurred a known danger and assumed the risk." Smith v. Foster, 93 Ill. App. 138. The observance of due care and caution on the part of appellee at the time of the accident is indispensable to his right to recover. Penn Co. v. Lynch, 90 Ill. 333. The evidence shows that appellee did not do this. It shows such a want of care on his part that he has no right to recover. I. C. R. R. Co. v. Swift, 213 Ill. 307, 316; Illinois Central R. Co. v. Sporleder, 199 id. 184.

It follows from what we have said that the trial court erred in denying the motion of appellant to instruct the jury to return a verdict in favor of the defendant.

It is unnecessary to a disposition of the case to discuss the other questions raised on the record. The judgment is reversed, with a finding of facts.

*Reversed with finding of facts.*

Mr. Justice BAKER, dissenting.