THE MORDEN FROG AND CROSSING WORKS

*v.*

ADOLPH FRIES.

*Opinion filed June 19, 1907.*

1. MASTER AND SERVANT—*promise to repair defect complained of creates new relation.* By the master's promise to repair a defect in the machinery complained of by the servant a new relation is created, whereby the master impliedly agrees that the servant shall not be held to have assumed the risk for a reasonable time following the promise, unless the danger of remaining at work is so imminent that no prudent person would encounter it.

2. SAME—*servant must complain because of apprehended danger to himself and must intend to quit the work.* In order that the master's promise to repair a defect may operate to relieve the servant of the assumption of the risk the servant must have complained of the defect because of apprehended danger to himself, and he must have intended to quit the work unless the defect was repaired, or else the master's promise does not create a new relation.

3. SAME—*servant has burden of proving that master's promise to repair induced him to remain at work.* A servant seeking to recover for an injury received by continuing to work with a defective machine after he complained of the defect and received the master's promise to repair has the burden of proving that he was induced to remain at work by the promise to repair, but if there is any evidence tending to prove that such was the case the question is one of fact.

4. SAME—*servant need not tell master he intends to quit if defect is not repaired.* While it is essential that a servant who has complained to the master of a defect shall intend to quit working with the machine because of apprehension of danger to himself from the existence of the defect complained of, yet it is not essential that he expressly communicate such fact to the master.

5. SAME—*shearing and punching machine is not a common implement.* A shearing and punching machine used in working heavy metal plates is not within that class of simple and ordinary tools and implements the construction and operation of which, and the dangers attendant thereon, are so much a matter of common knowledge that a servant using them must be held to have assumed the risk of injury from known defects notwithstanding the master's promise to repair.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

JOHN BARTON PAYNE, F. J. CANTY, and J. C. M. CLOW, for appellant.

ROBERT F. MUNSELL, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Adolph Fries, the appellee, brought this action on the case against Morden Frog and Crossing Works, a corporation, the appellant, in the superior court of Cook county, and by his declaration alleged that the defendant was a manufacturer of heavy railroad supplies, and had in its shop a punching or shearing machine used for punching holes in iron or steel plates; that plaintiff operated said machine as a servant of the defendant and was required to throw the machine in gear by putting his foot on a lever; that the clutch for throwing the machine in gear was old and worn and unfit for the purpose; that its condition tended to make it slip and throw the lever on which plaintiff's foot rested,

violently upward; that plaintiff complained to defendant of
the condition of the clutch, and received a promise that it
would be fixed and a direction to continue at work until
the same was done; that, relying upon said promise, plain-
tiff continued in said employment, and that while plaintiff
was in the exercise of due care and caution for his own
safety the old and worn clutch slipped from the gear into
which it was thrown and caused the lever to fly upward,
breaking his leg. The plea was the general issue and there
was a trial by jury. At the conclusion of the evidence the
court refused to give an instruction asked by the defendant
directing a verdict of not guilty, and thereupon, by agree-
ment of counsel, the jury were discharged and the issue
was submitted to the court, with an agreement that if any
amount should be found as damages, such amount should
be $1750. The defendant presented to the court proposi-
tions of law requiring a finding of not guilty, which were
refused, and the court found the defendant guilty and en-
tered judgment for $1750. On appeal to the Appellate
Court for the First District the branch of that court af-
firmed the judgment, and this further appeal was prosecuted.

The argument in support of the assignment of errors is
devoted to the one proposition that the facts proved were
not sufficient, in law, to authorize the finding and judg-
ment, and the trial court ought to have so held upon the
propositions of law submitted. There are three divisions
of the argument: First, that in the absence of any legal
complaint and promise to repair, plaintiff's action would
have been barred by the doctrine of assumed risk; second,
that the alleged complaint and promise to repair were in-
sufficient because the complaint was not made on account
of any apprehended danger to the plaintiff, and the plain-
tiff did not indicate to the defendant that he intended to
quit the service if the defect was not remedied and was not
induced to continue the work by the promise to remedy the
defect; third, that even if there was, in fact, a defect ren-

dering the work dangerous, and complaint was made and plaintiff was induced to continue work by a promise to repair, yet the machine was of such simple character as to come within the rule applicable to common tools and implements, and the promise to repair did not relieve plaintiff from assumption of the risk.

The evidence to which the trial court was asked to apply these rules was to the following effect: The machine was a large double punching and shearing machine, standing seven feet high and ten feet long, with a table on each end of the machine. There was a shaft running through the center of the machine, five and one-half inches in diameter, on which there was a wheel or companion piece of the clutch twelve inches in diameter, which revolved at a high rate of speed, and contained recesses into which the teeth or cogs of the clutch were thrown by means of a lever, upon which the operator placed his foot. The clutch was of the same diameter, with two teeth or cogs, six and one-half inches in length and between one and three-eighths and one and one-half inches deep. This clutch was thrown into the companion piece by a lever, and if the teeth or cogs and recesses met properly the two formed a solid body circular in form, and the machine was thereby started, driving the dies down through the metal. When the operator took his foot from the lever the clutch was thrown back on the shaft by means of a spring and remained idle on the shaft. The teeth or cogs of the clutch were worn and had been gradually growing worse, so that at the time of the accident there was from three-eighths to half an inch worn off the corners, and they were rounded so that the clutch would fly out occasionally and throw the lever up with great force. It was not a new clutch when put on, and defendant, through its foreman, had full knowledge of its condition. The foreman was notified that the clutch was kicking and could hardly be kept in place, and was also notified that another employee had been hurt by the clutch slipping from the gear wheel and

throwing the lever back. The defendant was negligent and its negligence caused the injury to the plaintiff. The machine was operated day and night, and the plaintiff was the night operator. On the night of November 3, 1902, he worked on the machine until about midnight, when he discovered it was working badly, one of the bolts in the die being broken. He then quit work and hung a sign on the machine that it was out of order and needed repairing. The next day, on November 4, when he came to work, he met the foreman, who told him that the die had been fixed. Plaintiff said, "How about that clutch?" and the foreman replied that they would fix it on Saturday, which was a time when the machine would be shut down. Plaintiff was operating the machine, punching holes in metal plates about half an inch thick and about nine inches square, and the foreman told him that he wanted him to knock all of them out that night that he could; that they were behind their orders. Plaintiff went to work and operated the machine perhaps 1300 times before he was injured, at about 1:30 A. M., and during that time the lever kicked back about half a dozen times. At the time of the injury the teeth or cogs slipped out of the recesses and the lever kicked back with such violence as to break plaintiff's leg.

It is the law that unless there was such a complaint and promise to repair as relieved the plaintiff from assuming the risk arising from the defect he could not recover for his injury. By his contract of employment plaintiff assumed all of the ordinary hazards arising from the performance of the duties of his voluntary engagement, and when he learned, as it is admitted he did, that his work had become more dangerous by reason of the defect in the clutch, he had his election to quit the service or assume the risk arising from the defect. A servant not only assumes all the usual and known dangers incident to his employment, but also takes upon himself the risk arising from defective tools and machinery, if after the employment he knows of the

defect and voluntarily continues in the service without objection. The law, however, creates an exception or modification of that rule where the servant, after acquiring knowledge of a defect, gives notice of the same to the master and the master promises to remedy the defect. Ordinarily the master would suffer loss by having the work stopped, and the effect of his promise to repair is to relieve the servant from assumption of risk for a reasonable time thereafter. The servant may continue in the performance of his duties for a reasonable time to permit the performance of the promise, unless the danger is so imminent that no prudent person would encounter it. By the promise a new relation is created, whereby the master impliedly agrees that the servant shall not be held to have assumed the risk for a reasonable time following the promise. (*Missouri Furnace Co.* v. *Abend,* 107 Ill. 44; *Swift & Co.* v. *Madden,* 165 id. 41; *Donley* v. *Dougherty,* 174 id. 582; *Swift & Co.* v. *O'Neill,* 187 id. 337.) The question here is whether the evidence fairly tended to prove such a complaint and promise to repair as relieved plaintiff from assuming the risk.

Counsel are also right in the position that the complaint must be on account of some danger to himself apprehended by the servant, but the evidence fairly tended to prove that the complaint of plaintiff was on account of an apprehension of danger to himself. There is nothing in the evidence to indicate that it was made in the interest of the defendant or because the machine did not do good work on account of the defect. Plaintiff testified that he thought the machine was dangerous, and that the danger consisted in the kicking or flying back of the lever after he had pressed it down with his foot.

It is further insisted that the plaintiff was bound to inform the defendant that it was his intention to quit work unless the defect was remedied. Although he must have had such an intention, we do not regard it as necessary that he should declare that intention in terms. It was the duty

of plaintiff to either quit the service when he became aware of the defect, or assume the risk arising from it unless there was a promise to repair, and the burden was on him to show that he was induced to remain at work by the promise to repair. (4 Thompson on Negligence, sec. 3866.) It is because the promise of the master to repair a defect complained of by a servant induces such servant to continue in the employment that the servant is entitled to recover for an injury. (20 Am. & Eng. Ency. of Law,—2d ed.—127.) If the promise to remedy the defect did not induce the plaintiff to remain in the service when he would otherwise have abandoned it, the promise would have no effect to create a new relation. The court or jury could determine from all the facts and circumstances whether the plaintiff was induced to remain in the service by the promise to repair the clutch on Saturday, when the machinery would be shut down and the work could be done, and if there was any evidence tending to prove the same, the question whether the plaintiff, relying upon the promise, was induced to remain in the defendant's employ until he was injured, was a question of fact. *Weber Wagon Co.* v. *Kehl,* 139 Ill. 644.

It is contended that the punching and shearing machine comes under the rule of law stated in *Webster Manf. Co.* v. *Nisbett,* 205 Ill. 273, and *Gunning System* v. *LaPointe,* 212 id. 274, applicable to the case of common tools, implements and constructions known to everybody. The work of the plaintiff with this machine was not the performance of ordinary labor with simple and ordinary tools, and we think the machine does not come within the rule invoked. Of course, the plaintiff understood enough about it to know that there was some degree of danger arising from the defect. It can not be said that he had the same perfect knowledge and comprehension of the machine and its operation that he would have had of a simple tool or implement.

The errors assigned cannot be sustained, and the judgment is affirmed.                          *Judgment affirmed.*