## Frank Suchomel, Appellee, v. James Maxwell et al., Appellants.

### Gen. No. 13,997.

1. MASTER AND SERVANT—*when ripsaw defective.* A ripsaw is defective where because of the want of a board or cover thereto the wood and slivers fly in the face of the operator.

2. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* A servant does not assume the risk of injury from a defective machine where he has continued at work at such machine not beyond a reasonable time under a promise of his master to repair; the servant has a right to rely upon such a promise when made with respect to a simple device if the machine as a whole was so dangerous that he would not have been justified in himself undertaking to make the repairs.

3. MASTER AND SERVANT—*who vice principal.* A servant who is the medium of communication between the master and his servants, who was the proper person to make repairs when requested and who had the power to dismiss a servant requesting such repairs, is a vice principal within the meaning of the law.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed November 12, 1908.

Statement by the Court. This is an appeal from a judgment for $5,000, in favor of Frank Suchomel, the appellee here and plaintiff below, against James Maxwell and Henry B. Maxwell (copartners under the name of Maxwell Bros.), appellants here and defendants below, rendered May 18, 1907, by the Circuit Court of Cook county.

The judgment was entered on the verdict of a jury in an action on the case for personal injuries.

The injury sued for was the loss of sight in one eye. This loss was caused, according to the allegations of the declaration, by the flying of a sliver or particle of wood with great violence against the eye, from a circular rip saw which the plaintiff, while in the employ of defendants (who are the proprietors of a box

factory in Chicago), was as such employe operating for said defendants.

The declaration in its first count alleges that it was the duty of the defendants to maintain the said saw in a safe, suitable and well constructed condition for the safety of their employes thereon employed, but that the said saw was, through the carelessness and negligence of the defendants, defectively constructed and maintained, in that "there was no sufficient guard, hood, apron, or other safeguard to protect the person operating the said saw from the sliver of wood, sawdust and other dangerous articles and pieces of substance that were apt to fly from said saw while in motion and strike upon and against the said person so operating said saw, which rendered the operation of said saw dangerous."

This count then alleges the ignorance and inexperience of the plaintiff in that danger and the knowledge of the defendants thereof, and of the danger incident to the operation of the saw, and an order from the defendants, through their foreman, to the plaintiff to operate said saw "without giving the said plaintiff sufficient instructions as to the condition of the saw and the manner of operating the same, and without supplying the said saw with a proper hood, apron, or other safeguard," etc., and in consequence the subsequent accident.

The second count of the declaration alleges in addition that the plaintiff complained to the foreman "that the saw was unsafe and defective in that it was not supplied or equipped with any hood, apron, guard or other safety appliance to keep the slivers and other particles of wood from being thrown upon and against the plaintiff while he was operating the said saw," and requested the foreman "to repair the defects and remove the danger," which the foreman promised to do by equipping the saw with proper safeguards within a reasonable time, ordering the plaintiff to continue operating the saw in the meanwhile, and that in obedi-

ence to the foreman's orders and relying on his promises, and in the exercise of reasonable care, the plaintiff continued in the operation of the saw until the happening of the accident.

After the rendition of the verdict the defendants moved for a new trial, which was denied. Judgment having been entered on the verdict, this appeal followed.

In this court the errors assigned and relied on in argument are based entirely on the denial of a new trial. It is insisted that the verdict was unsupported by and against the weight of the evidence, and in consequence should have been set aside. Complaint is also made that the court erred in refusing to strike out the testimony of the plaintiff on direct examination, that "a piece of wood flew up and hit him in the eye," because on cross-examination he answered that he knew it was a piece of wood that hit him in the eye only because while he was operating the saw and a board was going through the machine he was struck in the eye and his eye crushed; that he grabbed for the board that was going through and got it, and he and a fellow workman standing by saw where the sliver or piece was missing from it. He had testified on cross-examination that splinters, sawdust and wood were continually flying from the revolving saw while he was operating it.

A defense urged in the trial below of a release from the plaintiff to the defendants is not insisted on in the appeal.

J. C. M. CLOW and F. J. CANTY, for appellants.

JOSEPH SABATH and LAWRENCE W. POTTER, for appellee; QUIN O'BRIEN, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

The evidence in this case is amply sufficient to show

that while the plaintiff was as an employe of the defendants operating a rip saw at their factory, which is a large manufacturing plant with many machines operated by steam power, a flying sliver or piece of wood from the board he was guiding through the machine flew up and struck his right eye, causing the total blindness thereof. It is unnecessary for us to discuss the objection noted in the statement prefixed to this opinion, to the testimony of the plaintiff to this fact. That testimony is as simple and direct as it could well be made, and leaves no doubt of the fact. Of course no serious doubt is held or suggested. The trial judge committed no error in his rulings on evidence. Nor, as we read the evidence, does the point made that the plaintiff was guilty of contributory negligence need discussion from us. The propositions seriously insisted on in objection to the verdict, are that the evidence fails to show any other danger connected with the rip saw in question, than that necessarily usual and incident to the operation of such a machine; that this ordinary danger the plaintiff was fully cognizant of and assumed when he went to work on the rip saw, and that no sufficient case of a complaint and promise to repair was made out by the plaintiff, to take the case out of the doctrine which would impute to him an assumption of the risk.

This last proposition is based by the appellants on the theories: (a) That the evidence does not show that the machine was defective in any way; therefore, it is said that no complaint on plaintiff's part and no promise on defendants' part would be material; (b) that it was on account of the inconvenience alone that complaint was made by the plaintiff, not on account of the danger, and therefore no effect should be given to it as altering his status in assuming the risk; (c) that the appliance desired and promised was of so simple a nature and construction that the promise to repair does not fall within the rule which exempts the servant from the assumption of risk on such a promise. On

this branch of the argument is cited Webster Manfg. Company v. Nisbett, 205 Ill. 273, and Bowen v. Chicago and Northwestern Railway Co., 117 Ill. App. 9; (d) that the person to whom the plaintiff made his complaint and from whom he received the promise was not a foreman or vice-principal, but a mere fellow workman, without authority to receive the complaint or make the promise.

With the first proposition of the defense, that the evidence shows no other danger connected with the saw than that necessarily incident to such a machine, we are not in accord.

We think that the evidence shows that because of the want of a board or cover to the machine, the wood and slivers so constantly flew in the face of the operator that it could not but be called defective. It was not reasonably safe. Whether this was the result of the breaking of a cap formerly on the machine, as seems to be implied in some testimony in the record, or of originally defective construction, is not material. Swift & Co. v. O'Neill, 187 Ill. 337.

As the Supreme Court said in Morden Frog Works v. Fries, 228 Ill. 246, a servant not only assumes all the usual and known dangers incident to his employment, but also takes upon himself the risk arising from defective tools and machinery, if after the employment he knows of the defect and voluntarily continues in the service without objection.

But as the court also said in that case: "The law, however, creates an exception or modification of that rule where the servant, after acquiring notice of a defect, gives notice of the same to the master and the master promises to remedy the defect."

There is in the case at bar no doubt from the evidence that such a notice was given by the plaintiff to one Hovorka, whom the plaintiff styles "the foreman," and that Hovorka had promised that the defect should be supplied.

Apart from the question of the authority and posi-

tion of Hovorka, which we will hereinafter discuss, the defendants rely on "exceptions within this exception." They say that the exception does not apply to promises to repair simple, ordinary tools, and that the machine involved, or its desired hood at least, was such a simple implement.

The machine operated by the plaintiff must be considered as a whole. It was a machine saw operated by steam power, and belting, and a machine in many different directions proverbially a dangerous and serious thing to meddle with, and we think what the Supreme Court said also in the Morden Frog Works case *(supra),* "The work of the plaintiff with this machine was not the performance of ordinary labor with simple and ordinary tools," is applicable to this case.

But the defendants say also that the exception does not apply if the complaint made is not founded on apprehended danger, but on the workman's convenience or the interests of his employer in the doing of the work. This position is borne out by the Supreme Court in the Morden Frog Works case, but we think that in the case at bar, as in that case, the evidence fairly tended to prove that the complaint of plaintiff was on account of an apprehension of danger to himself.

The evidence of the plaintiff on direct examination was that after he had worked a few days he told the "foreman" that the shavings and sawdust and splinters were flying up in the air, and that he must put something over; that the "foreman" then promised to do so; that the plaintiff then worked a couple more days; that then he again told the "foreman" that "he had to fix it," and the "foreman" said he would fix it; that an hour thereafter the accident happened. On cross-examination he said that the first day he worked, owing to the direction of the wind the sawdust and splinters flying "didn't seem to hurt him any", but that afterward he spoke to the "foreman" about them three separate times; that at the second time, as at the other times, the "foreman" said he would "fix it" for him,

and that at the third time (the day the accident happened) he, the plaintiff, told the "foreman" that if he didn't fix it, he, the plaintiff, wouldn't come back in the afternoon; and he says "I wouldn't have come to work in the afternoon."

This is practically all the evidence on the complaint and promise; and again we think the language of Morden Frog Works v. Fries *(supra)* is applicable: "Counsel are also right in the position that the complaint must be on account of some danger to himself apprehended by the servant; but the evidence fairly tended to prove that the complaint of plaintiff was on account of an apprehension of danger to himself. There is nothing in the evidence to indicate that it was made in the interest of the defendant or because the machine did not do good work on account of the defect."

By the instructions of the court it was left to the jury to say, from the evidence, whether the rip saw was reasonably safe or not; whether the defendants knew of the alleged defect or by ordinary care would have known of it, whether the alleged defect increased the danger to the plaintiff in doing his work, and whether on that ground the plaintiff complained of the alleged defective condition, and whether the alleged defective condition was the proximate cause of the accident, and we see no reason for differing from the jury in the decision of these questions shown by their verdict.

It was also left to the jury to say whether the complaint, if made, was made to the authorized agent of the defendants, and whether a promise to remedy the alleged defect was made in response thereto by an authorized agent of the defendants, whether the plaintiff was induced by said promise, if made, to continue at the work, and whether the plaintiff received the injury in question before a time had elapsed after said promise reasonably sufficient to do the work of remedying the alleged defect.

We fail also to see any reason for finding fault with the decision of the jury on these points.

The plaintiff was a Bohemian and spoke Bohemian only, knowing only a few English words. He had several Bohemian fellow-workmen, and, as he says, one Frank Hovorka, who was a Bohemian, "did all the talking with them." There were, he says, two other "foremen," who were English and could not speak Bohemian, but that Frank Hovorka was the man who used "to fix" all the machines and keep them in order; that he was "foreman" of the machine hands; that he told the "foreman" when a machine hand was unsatisfactory and the "foreman" would let him go; that all the Bohemians looked to Frank Hovorka and did what he told them to; that it was Hovorka who put him, the plaintiff, to work on the rip saw in the first place, taking him from a planer for that purpose.

Although witnesses for the defense testified that Hovorka was not a "foreman" for the defendants, they do not deny the essential matters of his representation of the defendants and his acting for them as indicated by the testimony for the plaintiff. He certainly was the only medium of communication between the defendants and the plaintiff; he was the proper man to make repairs which the plaintiff requested; he had power to dismiss the plaintiff had he been unsatisfactory, and power, which he exercised, to change his work from a less to a more hazardous employment.

If not a "foreman," *eo nomine,* he was as to the plaintiff a "vice principal" and an authorized agent of the defendants, to whom the complaint was properly made and whose promise to repair must be considered the promise of the defendants.

We see no error in the record justifying a reversal of the judgment of the Circuit Court, and it is accordingly affirmed.

*Affirmed.*