Meyer Levinson, Defendant in Error, v. David T. Lyon et al., Plaintiffs in Error.

Gen. No. 14,622.

1. MASTER AND SERVANT—*when doctrine of assumed risk applies.* If the work performed by the servant is simple, the danger open and obvious and known to the servant each and every time he performs the same, the doctrine of assumed risk operates against him.

2. MASTER AND SERVANT—*when reliance upon promise to repair does not preclude operation of doctrine of assumed risk.* If the device complained of is simple and the danger obvious and practically understood by the servant, a promise to repair by the master does not prevent the operation of the doctrine of assumed risk.

Action in case for personal injuries. Error to the Municipal Court of Chicago; the Hon. MANCHA BRUGGEMEYER, Judge, presiding. Heard in this court at the October term, 1908. Reversed with finding of facts. Opinion filed November 8, 1909.

W. G. SHOCKEY and MILLS & IROSE, for plaintiff in error.

WHITE, MABIE & CONKEY, for defendant in error; LEMUEL M. ACKLEY, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is a suit for personal injuries. Defendant in error, hereinafter called plaintiff, was in the employ of the plaintiffs in error, hereinafter called defendants, and while engaged in closing certain iron shutters in the defendants' wholesale house, had his right wrist cut by a piece of glass which fell out of the window. He had been opening these iron shutters every morning and closing them every night for about five months as a part of his regular employment. The accident occurred just before the hour of six o'clock in the evening of August 27th. The defendant was then eighteen years of age. He states that the piece of

glass fell out of a lower sash, when he "raised the window to take the stick out;" that there were no ropes or pulleys on it; that "the frame was rotten and parts of the glass were broken, and some wholly missing and they had to keep the window up with a stick." He states that he had raised the window with his left hand to take the stick out, and after the window was raised "some glass fell out and cut my right hand." No one else was present or saw the accident. The glass was "puttied in on the outside of the window sash." The iron shutters when open were held back by iron rods about three feet in length, which were fastened to the window sill. When holding the window open the loose ends of these rods were inserted in sockets of the iron shutters, but when not so in use, they were leaned against the window casing.

It is contended in behalf of the defendants that the trial court erred in denying a motion made at the close of all the evidence to instruct the jury to find the defendants not guilty; that inasmuch as the plaintiff knew of the alleged defective condition of the window and sash during the whole time when he was daily raising and lowering the lower sash in order to open and close the iron shutters, and by his own testimony is shown to have appreciated the danger for at least two months before the accident, he assumed the risk and cannot recover. The plaintiff testifies to the effect, that before the accident he had "several times communicated with the foreman or assistant foreman" of the defendants with reference to these windows; that the first time he did this was two months before he was hurt; that he then told the assistant foreman that when he was "going to close the window a piece of glass fell out and almost struck me and I almost got hurt;" and that the foreman said, "You go about your work and I will have it fixed;" that "this was two months before I got hurt that this pane of glass fell out;" that at another time he heard a crash and going back there saw a pane of glass out in the floor in front

of that north window; that he raised it up and stood it against the wall and then walked over and told the assistant foreman, "There is a pane of glass fell out;" and that the reply was, "You go about your work and I will see to it and have it fixed;" that this was two weeks before he was hurt; that about a week before the accident he saw the foreman go and look carefully at the window and that a day or so later the foreman sent the assistant foreman to look at it and that later the plaintiff told the foreman "I almost got hurt about two months ago," but received no answer; that he heard the foreman however say to the assistant foreman, "We had better get some one to fix this window there in the toy department and get some one to putty them up before some one gets them."

Plaintiff's version of the conditions under which he was injured clearly shows that he was fully informed as to the condition of the window and all the appliances during the whole five months in which he had been opening and closing it daily; that for the two months preceding the accident at least he was aware of the danger of being hurt by falling glass, but that nevertheless he voluntarily continued to raise and lower the sash and to open and close the iron shutters as he had done from the beginning of his employment. This work was of the simplest character. Whatever danger there was, was open and obvious, and every time he raised or lowered the window sash the plaintiff acted with full knowledge of such danger and assumption of whatever risk was involved in what he was doing. McCormick Machine Co. v. Zakzewski, 220 Ill. 522-530, and cases there cited.

In a suit against an employer in a case of this kind it is incumbent upon the plaintiff to establish not only that the appliance by which he was injured was defective, and that the master had or should have had knowledge of the defects, but that the plaintiff did not know of the defect and had not equal means with

the master of knowing. Goldie v. Werner, 151 Ill. 551-556.

It is sought, however, in the case at bar to exempt the plaintiff from the operation of the rule applicable in cases of assumed risk on the alleged ground that the plaintiff made complaint and that promises to repair were made. It is argued that the plaintiff was led to believe repairs were about to be made and therefore did not assume the risk for a reasonable time following the promise, and is so relieved from assumption of risk. See Morden Frog Works v. Fries, 228 Ill. 246-247-250. The first of the alleged complaints was made two months before the accident, and the second two weeks before. In each case, according to the plaintiff, the reply was in substance, "You go about your work and I will have it fixed." If it be considered that a sufficiently reasonable time following this alleged promise had not elapsed when the accident occurred to charge the plaintiff with assumption of risk on that ground, it is yet indisputable that the danger was open and obvious, apparent to the dullest understanding, and that the appliance was of the simplest and most familiar character. Plaintiff understood the danger of glass falling as clearly as the employer or any one could. In such cases the rule of assumed risk is not suspended. The reason for this is sound. It would be absurd to say that an employe in the case of a simple and familiar appliance does not assume a perfectly obvious risk which he clearly sees and fully appreciates, merely because the employer has said he will have it fixed. It is true the employe is exempted from the application of the rule in cases where the defect which the master has promised to repair is one where some particular skill and experience are requisite to enable the employe "to know and appreciate the defect and the danger incident thereto, or where machinery and materials are used of which the servant can have little knowledge." Kistner v. American Steel Foundries, 233 Ill. 35-37; Webster Mfg. Co. v. Nisbitt, 205

Ill. 273-277, and cases there cited; Dauchy Iron Works
v. Nevin, 130 Ill. App. 475-479. The present is not
such a case and moreover there is no evidence that the
plaintiff relied on the alleged promise to repair or was
in any way misled by it and 'so induced to continue to
close the shutters as he had been doing for months.
Morden Frog Works v. Fries, 228 Ill. 246-251-252.

We are of opinion for reasons indicated that the
court erred in denying defendants' motion to instruct
the jury to find the defendants not guilty. The judg-
ment of the Municipal Court therefore must be re-
versed with a finding of facts.

*Reversed with finding of facts.*