## Robert J. Mulcahy, Appellee, v. Chicago & Alton Railroad Company, Appellant.

### Gen. No. 15,119.

1. MASTER AND SERVANT—*what essential to recovery by latter.* Before a servant may recover from his master for injuries received he must establish by a preponderance of the evidence three propositions: first, the existence of the defect averred; second, that the master knew or in the exercise of ordinary care would have had knowledge of such defect, and, third, that the servant did not know of the defect and did not have equal opportunities with the master of knowing it.

2. MASTER AND SERVANT—*when doctrine of assumed risk precludes recovery.* If the injury was the result of a condition known to the servant which was one of the assumed risks of his employment he cannot recover.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed with finding of facts. Opinion filed October 21, 1910.

**Statement by the Court.** The plaintiff, Robert J. Mulcahy, was injured on February 13, 1903, while he was employed by the defendant, Chicago & Alton Railroad Company, as a switchman, and engaged in his duties. He recovered a judgment for damages in the Circuit Court for $8,000 for his injuries against the defendant, and this appeal is prosecuted to reverse it.

The declaration is in one count and charges the defendant with negligence in permitting a foot-board of its locomotive to become out of repair, in that the tank of the locomotive leaked and water dripped down on the foot-board and froze, causing the plaintiff's foot to slip off the foot-board onto the track, and the cars attached to the locomotive passed over and crushed his feet.

On the day of the injury the plaintiff went to work on the engine at eight o'clock A. M. and continued at his work all day in the usual manner until about seven o'clock P. M. Near Western avenue in Chicago the tracks of the defendant

connect with those of the Chicago Junction Railway. At the connection there was an interlocking switch controlled from a tower. The conductor and the plaintiff were riding on the front foot-board of the locomotive. No signal was received and the engine stopped. Plaintiff went ahead with his lantern about 150 feet, and signaled the engineer to "come on." Plaintiff remained standing where he was until the locomotive came up and, as it passed, attempted to step upon the rear foot-board and either slipped, as he claimed, on the ice which had formed on the foot-board, or overstepped. The engine was going at the "ordinary speed for getting on or off."

The plaintiff was about twenty-one years old at the time of his injuries. He had worked as a brakeman with switching crews on freight trains in freight yards about ten months and had worked for the defendant about seven months in the same employment, and for several weeks upon the same engine he was working on when he was injured. He was "head brakeman," which required him to work next to the engine, either from the front or rear foot-board. His work required him to get on and off the foot-boards from fifty to two hundred times a day.

Plaintiff's claim in his testimony is that on the morning of the day of the accident, when he went to work, he noticed water dripping down the end of the sloping tank onto the rear foot-board and forming ice on the foot-board. The water appeared to come from a hole in the tank about two and one half feet from the end and about the same distance from the side of the tank. As to the existence of this hole there is a controversy in the evidence. Plaintiff claims he called the attention of his foreman, Wright, to the leak when he discovered it in the morning, and Wright told him "it was all right, it don't amount to anything." This is denied by Wright.

At the close of the plaintiff's evidence and again at the close of all the evidence in the case the defendant offered and requested peremptory instructions to find the defendant

not guilty.    These instructions were each refused by the court.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; ED-WARD W. EVERETT, of counsel.

GEORGE E. GORMAN, for appellee; JOHN M. POLLOCK, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

The law is well settled in this State that before a servant may recover from his master for injuries received, he must establish by a preponderance of the evidence three propositions, viz.: First, the existence of the defect averred; second, that the master knew, or in the exercise of ordinary care would have had knowledge, of such defect; and third, that the servant did not know of the defect, and did not have equal opportunities with the master of knowing it.    McCormick Machine Co. v. Zakzewski, 220 Ill. 522; Christiansen v. Graver Tank Works, 223 id. 142; Metcalf Co. v. Nystedt, 203 id. 333.    The question is then presented by the refused instruction whether there is in the record evidence which, with the inferences reasonably to be drawn therefrom, tends to prove the above propositions.

Upon the question of the existence of the leak in the tank and that the water therefrom fell upon the foot-board, forming ice thereon, under the existing weather conditions, the witnesses Cox, Barrett and Cusack support the plaintiff.    On the other hand the testimony of the witnesses Allison, Smith, Coughlin and Wright tends to show that no such defect existed in the locomotive tank and that there was no ice on the foot-board at the time of plaintiff's injury.    Upon this controverted question of fact, this court would not in this case be warranted in saying the jury had come to a wrong conclusion.

The evidence relating to the second proposition—the defendant's knowledge of the defect—is confined to the testimony of the plaintiff in his own behalf, and to the testimony

of Wright denying that the plaintiff called his attention to what appeared to be a stream of water extending down the tank and dropping upon the foot-board, and denying the conversation between the plaintiff and himself with reference to the leak in the tank. The jury believed the plaintiff and disbelieved Wright. We cannot say on this evidence that the jury were clearly and manifestly wrong in their finding on this question.

On the third proposition, however, that the plaintiff did not know of the defect and did not have equal opportunities with the defendant of knowing it, there is no controversy in the evidence. The plaintiff says he knew of the defect, and not only that, but he called appellant's attention to it. The evidence on this question all points to the conclusion that plaintiff's opportunities of knowing of the defect, if it existed, were at least equal to those of the defendant and perhaps superior. The evidence on this proposition is all against the plaintiff. He therefore failed to establish a necessary element in his case to entitle him to recover; or, to state it more accurately, the plaintiff's case lacked this necessary element to his right of recovery. His own evidence on this question precludes him from recovering. He admits he knew of the leak, and that water was dripping upon the foot-board and forming ice thereon at eight o'clock in the morning, and he continued to use the foot-board until about seven o'clock in the evening without objection. That he appreciated the danger from such a condition of the foot-board is made clear by the evidence. For that reason he had chopped ice off the foot-board and put salt upon it frequently. From the evidence bearing upon this proposition, the conclusion is forced upon the court that plaintiff, on the case presented by the evidence, is not legally entitled to prevail.

Furthermore, in our opinion the plaintiff, on the evidence above adverted to, assumed the risk arising from the defect complained of. One of the ordinary hazards of his employment was that of slipping on the foot-boards. He knew that the formation of ice on the foot-board from the dripping

water and the freezing temperature increased the danger of his work. He had his election to quit the service or assume the risks arising from the defect. He voluntarily continued in the service without objection after he knew of the defect and that his work had become more dangerous by reason thereof. It must therefore be held that the plaintiff assumed the risk arising from the defective tank. Morden Frog Works v. Fries, 228 Ill. 246; Christiansen v. Graver Tank Works, *supra*; McCormick Machine Co. v. Zakzewski, *supra*.

According to plaintiff's testimony, ice and snow on the foot-board was of common occurrence during the winter months. He testified that, "very frequently the foot-board would have ice on it because of the water flowing from the tank onto the foot-board. It happened several times. It is a common occurrence out there. I always went and got some salt and sprinkled it on it. Previous to this time, I always chopped the ice off of it. I knew that water flowing from the tank would make ice on the foot-board. Had seen it before on several occasions. Could not say I saw it on this engine. Always looked at the foot-board to see what condition it was in prior to this time. This is the only time I never did remove it." The only conclusion from this testimony is that ice on the rear foot-board of an engine is a ferquent and common occurrence; and that the danger arising therefrom was one of the ordinary risks of the employment of plaintiff. By all the authorities in this jurisdiction plaintiff assumed the risk of injury therefrom.

For these reasons the Circuit Court erred in denying defendant's motion to exclude the evidence and give the peremptory instruction. The judgment is reversed with a finding of facts.

*Reversed with finding of facts.*