# Hugo Richter, Appellee, v. Charles W. Tegtmeyer, Appel= lant.

## Gen. No. 16,122.

1. MASTER ·AND SERVANT—*when doctrine of assumed risk applies; when not.* A servant assumes the risks arising from defective tools and machinery and from defects in his working place if after the employment he knows of the defects and appreciates the dangers thereof and voluntarily continues in the service without objection. The law makes an exception to that rule, where the servant gives notice of the defects and dangers and the master promises him to remedy the defects the servant may then continue in the same service for such a· time as would be reasonable for the master to fulfil such promise.

2. MASTER AND SERVANT—*when "simple tool rule," applies.* The "simple tool rule" is only applicable where the servant performs ordinary labor with ordinary tools at any place' where no intricate or dangerous machinery is involved. The doctrine is not applicable to any given case upon the grounds solely that the defect is simple and that the servant has full knowledge of the defect ànd danger of which complaint is made.

3. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* The doctrine of assumed risk does not apply in any case where the servant is working with defective and dangerous machinery unless the servant knows the defects and the dangers thereof. If he simply knows of the defects but does not know and appreciate the dangers incident thereto the doctrine does not apply. If he knows the defects and the dangers and makes complaint that it is dangerous to him to work with the machinery and of his intent to quit the work unless the defects are remedied and receives a promise by the master to remedy the defects or to remove the danger, the servant may then continue to work with the dangerous machinery until the master has had a reasonable time to fulfil his promise, and during that time the risk is not at all assumed by the servant.

4. MASTER AND SERVANT—*when doctrine of assumed risk applies.* If a servant is working at common labor with simple tools, such as an axe, or a hammer or a hoe, and is as familiar with them .and the dangers. thereof as the master, and is not exposed to any danger except those· that are incident to the ·use of such tools in a defective condition, the doctrine of assumed risk applies at all times and is not suspended by a promise to remedy or repair the defects.

5. INSTRUCTIONS—*when containing abstract proposition of law ground for reversal.* An instruction which contains an abstract proposition of law calculated to mislead is ground for reversal.

6. Verdicts—*when excessiveness cannot be cured by remittitur.* If the appellate court is unable to account for the size of a verdict by any reasonable view of the evidence except upon the theory that such verdict was the result of prejudice, passion or a misconception by the jury of the evidence bearing upon the question of damages, it cannot be cured by the allowance of a *remittitur.*

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. Richard S. Tuthill, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and remanded. Opinion filed February 14, 1912.

**Statement by the Court.** This is an action in case by Hugo Richter, appellee, to recover damages for personal injuries sustained by him about November 20, 1903, while employed in his duties in carrying boards in appellant's box factory. In a jury trial appellee recovered a verdict and judgment against appellant in the sum of $4,000.

The second count of the declaration, the only one relied on by appellee, charges that appellant negligently failed to furnish appellee a reasonably safe place in which to work; that the walk way over which appellee carried the lumber for appellant was covered with blocks of wood liable to cause injury; that on complaint thereof to appellant's foreman appellant promised to remove the same, upon which promise appellee relied; that said promise was not fulfilled by appellant and that as a result thereof appellee was injured by falling on a saw while exercising reasonable care.

The evidence discloses that the passageway on which appellee was injured was the main passageway to appellant's tables and saws to which appellee was carrying boards; that there was a regular man employed by appellant whose duty it was to sweep up the floor and keep the passageway cleared; that while throwing a load of boards from this passageway over a cross-cut saw of appellant to the table in which the rip-saw also ran, appellee's hand came in contact with the cross-cut saw, as he claims, by reason of his foot slipping on one

of said blocks, and throwing him forward and on to the running saw. About one hour intervened between the alleged promise of the foreman and the injury to appellee. The blocks in question were small sawed off portions of the boards being sawed, and were from two to six inches wide and three-eighths of an inch to an inch in thickness. Appellee sustained a ragged cut extending from about the middle of his thumb over the palmar surface of the hand to the wrist at the opposite side of the hand.

FRANK M. Cox and R. J. FELLINGHAM, for appellant.

JOHN A. BLOOMINGSTON, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

Much of the argument of appellant is devoted to a discussion of the doctrine of assumed risk and to his position that the complaint of appellee and the promise of appellant to remedy the defects complained of by appellee, as averred in the second count of the declaration, did not have the effect of suspending the assumption of the risk by appellee. There can be no question about appellee's knowledge of the defect in question, and of his appreciation of the dangers thereof, at and before the time of his injury under the evidence in this case. If there had been no promise to remove the blocks complained of, appellee would have been barred from a recovery by the doctrine of assumed risk. A servant assumes the risks arising from defective tools and machinery and from defects in his working place, if after the employment he knows of the defects and appreciates the dangers thereof and voluntarily continues in the service without objection. The law makes an exception to that rule where the servant gives notice of the defects and dangers and the master promises him to remedy the defects. The servant may then continue

in the same service for such a time as would be reasonable for the master to fulfill such promise. By such a promise of the master and a continuance of the work by the servant a new relation is created whereby the master impliedly agrees that the servant shall not be held to have assumed the risk for such reasonable time following the promise. The complaint must have been made on account of some supposed danger to the servant, and with the intent to quit such employment unless the defects are remedied. The burden is on the servant to show that he was induced to remain at the work by reason of the promise to repair. Morden Frog Works v. Fries, 228 Ill. 246, and cases there cited.

We think the evidence in this case tends to prove a right of recovery by appellee under the foregoing rules, but will not discuss it further upon the merits, because the judgment must be reversed upon other grounds. Appellant insists, however, that there can be no recovery in this case as a promise to repair or remove dangers does not suspend the risk of the servant engaged in ordinary labor which only requires the use of implements with which the employee is entirely familiar. In other words, he insists that the "simple tool" doctrine is applicable to this case, as set forth in Webster Mfg. Co. v. Nisbett, 205 Ill. 273. The doctrine that we are asked to hold here is that because appellee was injured by an "apparent and known danger," arising from a very simple defect and which was "so simple that no ordinary mind could fail to fully understand and appreciate it," appellant's promise to repair does not have the effect to create an implied agreement with appellee that the doctrine of assumed risk should be suspended for a reasonable time, etc. It must be remembered that the doctrine of assumed risk cannot be invoked against the servant's right to recover for an injury caused by defects in his working place in any case, unless he knows and appreciates the dangers thereof, or unless the danger is so open and

obvious that the law will imply that he has such knowledge and appreciation. The doctrine of assumed risk would not and could not apply in the first instance unless the servant had such knowledge and appreciation of the danger. There can be no suspension of a risk that never existed; and to say that if the servant fully knows and appreciates the danger, a promise to remove or remedy such danger will not suspend the risk or make an exception to the doctrine of assumed risk, is in effect to hold that there is no exception to the doctrine of assumed risk by reason of a promise to remedy or repair the danger. The "simple tool rule," as we understand it, is only applicable where the servant performs ordinary labor with ordinary tools and in a place where no intricate or dangerous machinery is involved. Nisbett case, *supra*, page 280. The doctrine is not applicable to any given case upon the grounds solely that the defect is simple and that the servant has full knowledge of the defect and danger of which complaint is made. The doctrine of assumed risk does not apply in any case where the servant is working with defective and dangerous machinery, unless the servant knows the defects and the dangers thereof. If he simply knows of the defects, but does not know and appreciate the dangers incident thereto, the doctrine of assumed risk does not apply. 'If he knows the defects and the dangers and makes complaint that it is dangerous to him to work with the machinery and with the intent to quit the work unless the defects are remedied, and receives a promise by the master to remedy the defects or to remove the danger, the servant may then continue to work with the dangerous machinery until the master has had a reasonable time to fulfill his promise, and during that time the risk is not at all assumed by the servant. If, however, the servant is working at common labor with simple tools such as an ax or a hammer or a hoe, and is as familiar with them and the dangers thereof as the master, and is not exposed to

any danger except those that are incident to the use
of such tools in a defective condition, the doctrine of
assumed risk applies at all times, and is not suspended
by a promise to remedy or repair the defects. In the
case now before us, while the blocks are very simple
obstructions, or defects, yet they were in the work
way of the plaintiff, and very near dangerous saws
in full motion over one of which, as he swears, he was
compelled to throw the lumber he was carrying to get
it to the place where he was ordered to take it. He
even testifies that this was the only way he could
reach that saw, and that the whole passageway was
covered with these blocks and with saw dust, sticks
and slabs, and that the saw on which he fell was idle
but running, and that he did not know it was running.
The evidence also shows that there were other saws all
around him running, and that a great deal of noise was
made also by box nailers, etc. Other witnesses, it is
true, testified that the floor of this aisle was clear and
that there were no blocks or slabs or other obstructions
in it, and that appellee did not stumble but simply put
or thrust his hands onto the saw. In deciding the ques-
tion of whether or not the court erred in submitting the
case to the jury, we are only to consider whether or
not there is evidence in the record that fairly tends to
prove all the material elements necessary to make out
the appellee's case. It is only upon the question of
whether or not the judgment or some portion thereof
should stand that we are authorized to weigh the evi-
dence, and that question cannot properly be considered
by us now, as we have determined to remand the cause.
The facts in the record do not warrant us in holding
that there were only a dozen blocks or so in the pas-
sageway that appellee could kick out of his way while
performing his work, as claimed by appellant. Neither
does it appear from the evidence that it was the ap-
pellee's duty to clear the passageway; but on the con-
trary it is in evidence that appellant kept a regular man

employed to do that work, and that the foreman told appellee to not stop his work, and that he, the foreman, would have the obstructions removed. For the same reasons, we are not authorized to reverse this judgment with a finding of facts to the effect that the appellee was guilty of contributory negligence upon any one of the three grounds argued by appellant.

Appellant's contention that the court erred in refusing to give its instructions numbered 16, 17 and 18 cannot be sustained. They all pertain to the "simple tool" rule, and are inapplicable to this case for the reasons already set forth in this opinion. Instruction No. 14 was properly refused, because it failed to give the jury a correct basis for determining what would have been a "reasonable time" in which the appellee might rely on the promise of appellant. The jury were not informed that appellee might remain in the service of appellant only for such time after the promise as would be reasonably sufficient to enable appellant to remedy the defect. They would have been informed by the instruction in question that after such notice appellee might rely thereon for a reasonable length of time only, and that what was such reasonable time would depend on the nature of the danger. The instruction is also objectionable because it is a mere abstract proposition of law. This instruction in proper form may be found in Illinois Steel Co. v. Mann, 170 Ill. 200.

The attending physician in this case testified that appellee received a ragged cut on his hand extending from about the middle of his thumb to the wrist on the opposite side; that the skin, muscles, tendons and nerves were cut and that the bones were "slightly nicked," but none of them broken; that it healed properly from the bottom towards the top, without any blood poisoning or other complications, and that all parts united and got well inside of two months; that the effect of the injuries will be to make his hand

weaker with a certain amount of loss of sensation and subject to being colder in cold weather; that after it healed appellee could flex his hand by opening and closing it and that the tendons were well united; that he suffered some considerable pain for a while and that he cannot do hard work so well as formerly without danger of inflammation of the skin where it was injured. Appellee was out about $25 for medical aid, was earning $1.50 per day when injured, and it did not appear from the evidence that he could not work at the same or similar service or that he could not earn as much money by his labor hereafter.

We think the damages awarded in this case are grossly excessive, and that the evidence bearing thereon does not warrant a recovery by the appellee of more than one fourth of the sum awarded by the jury. We are unable to account for so large a verdict by any reasonable view of the evidence except upon the theory that the verdict is the result of prejudice, passion or a misconception by the jury of the evidence bearing upon the question of damages. There has been no remittitur entered or suggested in this case; but even if there had been, the allowing of a remittitur under our finding would not cure the verdict in this case under the holdings of our Supreme and Appellate Courts. Loewenthal v. Streng, 90 Ill. 74; C. & E. I. R. R. Co. v. Cleminger, 77 Ill. App. 186; North Chicago St. R. R. Co. v. Hoffart, 82 Ill. App. 539. Another trial, we think, may shed much more light upon the main issues in this case, and enable the jury and this court as well to make a more satisfactory conclusion upon the merits of the case. The evidence in this record does not make it at all clear as to what particular place or spot appellee was required to deliver the boards in question at the time of his injury, and as to the proper way and manner for him to safely deliver such boards, if there was any such way and manner for him to do so.

The difficulty of understanding the evidence in this record may be appreciated by quoting some of the evidence in the case, supposed to throw light on the questions above suggested, to-wit:

Q. "So that if this was the entrance to the passageway (indicating), the saw was here some place (indicating)?"

A. "Yes, about three or four feet away there (indicating)."

On cross examination of the same witness we find the evidence on the same subject abstracted in the following manner: "That (indicating) is the passageway, and that (indicating) is the saw, and then I had to go over there (indicating)."

Much more of appellee's evidence, as abstracted, appears in the same condition as the evidence quoted, and the other evidence in the record fails to make clear the questions to which we have referred. It is counsel's duty to so present the case to the jury, and to so prepare the record for review, that the reviewing court may fully understand the case as presented to the jury. If counsel in retrying this case will remember that the court stenographer is not expected to photograph counsel, and witnesses, and their movements, while the evidence is being taken before the jury, we shall hope to have a complete record of the evidence, in case it shall be again submitted to us for review.

For the foregoing reasons the judgment is reversed, and the cause remanded.

*Reversed and remanded.*